SMITH *v.* THE STATE.

[No. 19,369. Filed December 18, 1900.]

GAME.—*Constitutional Law.*—Section 2209 Burns 1894, making it unlawful for any person to have in his possession any quail during the close season, as therein provided, is not violative of the fourteenth amendment to the United States Constitution which provides that no state shall make or enforce any law which shall deprive any person of property without due process of law, nor of article 1, §21 of the State Constitution which provides that no man's property shall be taken by law without just compensation. *pp. 611-614.*

SAME.—*Possession of Game Taken in Open Season.*—Under the provision of §2209 Burns 1894, one having in his possession quail during the close season, as therein provided, is liable to punishment therefor, although the quail came into his possession during the open season. *pp. 614-617.*

From the Marion Criminal Court. *Affirmed.*

*R. W. McBride* and *C. S. Denny,* for appellant.

*W. L. Taylor,* Attorney-General, and *A. E. Dickey,* for State.

HADLEY, J.—Appellant was convicted before a justice of the peace, under §2209 Burns 1894, §2107 Horner 1897, which reads as follows: "Whoever shoots or destroys * * * or has in his possession any quails * * *

during the period from the first day of January of any year
to the tenth day of November of the same year,   *   *   *
shall be fined," etc., upon an affidavit charging him with
having in his possession on the 5th day of February, 1900,
one quail. Upon appeal to the criminal court the appellant,
having pleaded not guilty, was again convicted and fined
upon the following evidence: "Said defendant admitted
in open court that on the 5th day of February, 1900, he did
have in his possession, at Marion county, in the State of
Indiana, one quail, as charged in the affidavit filed herein,
but that said quail had come to his possession on the 30th
day of December, 1899, at which time he received it and
placed it in his refrigerator where it had remained from
said date continuously until said 5th day of February,
1900. And this was all the evidence given in the cause."

Under the assignment of errors the appellant affirms two
propositions: (1) The unconstitutionality of the statute,
and (2) the guiltlessness of the act proved within the true
meaning of the statute. The appellant contends that if the
statute is to receive a literal construction, and make guilty
one who rightfully receives possession of quail in the per-
missive season, and becomes vested with the right of prop-
erty in a wholesome article of food, to compel a disposition
of the property by a fixed date, without reference to the use
it can be put to, is practical confiscation and violative of the
fourteenth amendment of the federal Constitution, which
provides that "no state shall make or enforce any law which
shall   *   *   *   deprive any person of   *   *   *   prop-
erty without due process of law", and of §21, article 1., of
the State Constitution, which provides that "no man's prop-
erty shall be taken by law without just compensation."

It is important to note that American quails are game
birds and as such belong to the State in its sovereign ca-
pacity as the trustee of the citizens in common. Such game
is a valuable and wholesome article of food diffused and
accessible to all, and its preservation a matter of general

Smith *v.* State.

interest to the people.  The primary object of government is mutual safety and benefit, and to promote these ends it has long been held that the State possesses such police power as enables it to employ drastic measures to protect the public health, morals, safety, and such other concerns as affect the happiness and general welfare of the citizens.  To deny such power is to deprive the government of one of its essential forces.  Nor is it apparent how there can exist any real ground of complaint.  The individual has no natural right to take game, or to acquire property in it, and all the right he possesses or can possess in this respect is granted him by the State.  The power to grant embodies the power to impose conditions; and in granting the privilege of reducing quail to possession, with proprietary right, it is competent for the State to prescribe such conditions of enjoyment as are deemed reasonable and necessary to protect the common interest.  The citizen, when he accepts the State's grant, accepts it impressed with all the restrictions and limitations laid upon it, and when he acquires property under such license he does so with full notice of his qualified right, and so, if he loses that which he has taken or held possession of upon forbidden terms, he has lost nothing that belonged to him, and there has been no taking of property without due process of law or without just compensation.

Quails not only supply a delicate and nutritious food highly valued by the people, but from their wild and agile nature offer alluring sport to hunters, which if unrestrained would probably lead to their ultimate extinction; hence, any measure which in the judgment of the legislature is reasonably calculated to avoid such result and preserve these food birds for future benefit, even to the extent of restricting the use of, or right of possession in the birds after they have been taken, or killed, must be held to be a legitimate exercise of legislative power.  *State* v. *Rodman,* 58 Minn. 393, 59 N. W. 1098; *Phelps* v. *Racey,* 60 N. Y. 10; *Haggerty* v. *St. Louis, etc., Co.,* 143 Mo. 238, 44 S. W. 1114, 40 L. R. A. 151; *State* v. *Judy,* 7 Mo. App. 524.

Other decisions which uphold the validity of such legisla-
tion but which turn upon the defense that the game was
lawfully acquired outside the state are as follows: *Mag-
ner* v. *People*, 97 Ill. 320; *American Ex. Co.* v. *People*,
133 Ill. 649, 24 N. E. 758, 9 L. R. A. 138; *Ex Parte
Maier*, 103 Cal. 476, 37 Pac. 402; *Roth* v. *State*, 51 Ohio
St. 209, 37 N. E. 259; *Stevens* v. *State*, 89 Md. 669, 43
Atl. 929; *Geer* v. *Connecticut*, 161 U. S. 519, 16 Sup. Ct.
600, 40 L. ed. 793.

Decisions of the State sustaining legislation for the pro-
tection and preservation of fish rest upon the same prin-
ciple. See *Gentile* v. *State*, 29 Ind. 409; *State* v. *Lewis*,
134 Ind. 250, 20 L. R. A. 52.

Upon the second point it is contended that if the law is
constitutional, the words "Whoever has in his possession
any quails" should not be construed to embrace quails
rightfully acquired in the open season, and continuously
kept by the owner in his possession to a period within the
close season.    We must assume that the lawmakers right-
fully apprehended the meaning of the words employed by
them in stating their intention, and in the absence of some
fact relating to the subject-matter legislated upon, or other
provisions of the act inconsistent with the ordinary meaning
of the language used, we must conclusively presume the
meaning to be that which is usually conveyed by the words.
To arbitrarily give an unusual meaning to the word would
be to change the law, and this we have no power to do.    It
has long been the policy of the State to preserve its fish and
food birds from destruction or immoderate diminution.    In
1857 there was passed "An act to provide for the pro-
tection of wild game defining the time in which the same
may be taken and killed." Acts 1857, p. 39.    In this first
act it was provided by section three that it should be unlaw-
ful to shoot, trap or net quails and pheasants between Feb-
ruary 1st and November 1st of each year, and by section
six it was made unlawful to have in possession any quails

or pheasants killed or taken within the prohibited season. It will be perceived that at the beginning of legislation upon this subject the legislature limited the wrongful possession to birds taken or killed within the forbidden season. This act was amended by contracting the permissive season in 1861 and again in 1863. In 1867 the first act, "To provide for the protection of fish, defining the time in which they may be trapped, netted or seined", was enacted making a violation of the provisions of the act a misdemeanor. Acts 1867, p. 128. At the same session another act was passed entitled "An act to provide for the protection of wild game". By this act it was made unlawful to shoot or trap quails or pheasants between February 1st and October 1st, and to net quails at any time, and unlawful to transport quails killed or taken in violation of the act. In 1871 another act "To provide for the protection of fish" was passed. Acts 1871, p. 24. And in 1877 still another act "To provide for the protection of wild game", by which act the netting and trapping of quails is absolutely prohibited at all times. Acts 1877, p. 69. Again in 1879 another step was taken by the legislature "To provide for the protection of wild game," section nine of which act reads as follows: "It shall be unlawful to sell, keep or expose for sale, *or have possession of any quail* or pheasant between the fifth day of January and the first day of November in any year;   *   *   *. Any person or persons violating the provisions of this section shall be fined $1 for each and every quail,   *   *   * so unlawfully kept, sold, exposed to sale, or possessed." Acts 1879, p. 242.

Other laws relating to the same subject were passed in 1881. See Acts 1881, p. 218, §§2106, 2112-2115, R. S. 1881, inclusive, prohibiting the destruction of quails, the selling *or possession of quails in* a particular season, the selling or posession of quails at all times that have not been killed by shooting, the transportation of quails within the State killed or taken in violation of law, and their transportation out of the State at any time.

In 1893 the method of protection was again emphasized by the act set out at the beginning of this opinion and under which this prosecution is had.

In 1897 there was passed "An act to prevent the destruction of quail" which makes it unlawful to kill any quail for the purpose of sale, or to sell, barter or offer to sell any quail caught or killed in the State.

The enacting clauses of the foregoing laws clearly disclose the general purpose of the State, and the progress made in restrictive measures affirms the inadequateness, in legislative opinion, of previous provisions to accomplish the purpose intended. At the beginning, more than forty years ago, it was made unlawful to shoot, trap, or net quails between February 1st and November 1st, and to have quails in possession that had been taken or killed in the close season. Next it was made unlawful to shoot or trap them between February 1st and October 1st and to net them at any time, and, as the next step, trapping was prohibited altogether. For twenty years it had been a good defense to a charge of wrongful possession to prove that the birds had been taken or killed in the open season, but in 1879 it was made unlawful, not only to sell, but to offer for sale, or *have in possession,* within the close season, any quail, without reference to when killed or acquired. As a further step, in 1881 the right to sell or have quails in possession in the open season was confined to such birds only as had been killed by shooting, and in 1897 the right to sell at any time was wholly denied.

The constantly increasing stringency in repressive measures illustrates the difficulty encountered by the legislature in framing a law that was effective for the protection of quails, and the provision under review, making the act of possession within the close season, *ipso facto,* a crime, after its adoption in 1879 and its reaffirmance three times in the same words, must be accepted as evidencing legislative opinion that such provision is an essential means of prevent-

ing an evasion of the law. As was well said in *State* v. *Rodman,* 58 Minn. 393: "What this provision aims at is not the mere fact of possession of game lawfully obtained, but to prevent its being unlawfully taken or killed. If it were permitted to have possession during the closed season, without limitation of game taken or killed during the open season, it would inevitably result in frequent violations of the law, without the least probability of a discovery. Game is usually found in secluded places, away from habitations of men, with no one to witness the killing but the hunter himself. The game would have no earmarks to show whether it was taken or killed in the open or close season, and hence conviction under this statute would ordinarily be impossible, and the law would become practically a dead letter. In these days of cold storage warehouses, the mere lapse of time after the expiration of the open season would furnish little aid in an effort to prove that the game had been taken or killed out of season."

In such misdemeanors the motive is of no consequence. It is the act, and the act only, that constitutes the offense. *State* v. *Engle,* (Ind. Sup.) 58 N. E. 698. The simple words are: "Whoever has in his possession any quail" is guilty. The language is so clear and unambiguous as to leave no room for construction. How or when the possession was acquired is not made material by the legislature, and we have no power to make it so. See cases above cited.

Judgment affirmed. Jordan, J., dissents.

### DISSENTING OPINION.

JORDAN, J.—I can not concur in the majority opinion in this case so far as it in effect holds that the possession of the quail by the appellant, under the facts, was a penal offense in the meaning and spirit of the statute in controversy. The admitted facts conclusively show that the quail in question had come into the possession of the accused on the 30th day of December, 1899, the same being a day

within the open season when it was lawful to kill or take quails and reduce the same to possession. On that date, it seems, it was placed by appellant in his refrigerator and there remained until the 5th day of the following February. The statute, as enacted, and whereby the legislature has declared the period which shall constitute the close season, in respect to killing or taking of such game, reads as follows: "Whoever shoots or destroys, or pursues for the purpose of shooting or destroying, or has in his possession any quails or pheasants during the period from the first day of January of any year to the tenth day of November of the same year, or shoots or kills any wild turkey between the first day of February and the first day of November of any year, shall be fined in the sum of $2 for each quail, wild turkey or pheasant so killed, and the sum of $1 for each quail or pheasant so pursued, or had in his possession." §2209 Burns 1894.

This act, under its provisions, neither assumes nor professes to deal with or to have any reference or application to quails which were lawfully taken and reduced to possession by the taker during the open season. From my view of the law it would certainly appear to be a very harsh and unreasonable interpretation of this statute to hold that the legislature thereby intended to make the possession of quail, when such possession was lawful at the taking, a criminal offense by the mere lapse of time, or, in other words, that a continuation of such possession over into the close season should constitute a crime. In the absence of an express declaration to that effect, can it be asserted that the legislature intended, by this statute, not only to make the possession of quails killed or taken during the forbidden time an unlawful act, but, under its provisions, it was intended to go further, and trace, if necessary to constitute the offense, the possession of such game back into the open season, and forbid, under a penalty, a continuation of such possession over into the close season? Before a judgment of a court in

a criminal cause which would lead to such an unjust and unreasonable result is rendered, the language of the statute involved should be clear and mandatory and free from all reasonable doubt in respect to its meaning.    Before the statute in question is enforced against the accused, under the facts in the case, the court ought to be fully satisfied that the act which the statute imputes to him is made unlawful, not only by the letter, but that it also falls within the spirit and intent of the law.    For the principle is elementary that a thing within the intent of the statute is as much within it as if it were within the letter, and a matter, although within the letter of the law, is not within its provisions if contrary to the intent and spirit of the act.    *Conn* v. *Board, etc.*, 151 Ind. 517.

It is a well settled canon in respect to the construction of laws that where the language of the legislature is fairly susceptible of two meanings, the one which excludes or prevents consequences which are mischievous and unjust will be preferred and adopted by the court.    In fact, statutes are not always, nor should they be, literally construed.    *Donnell* v. *State*, 2 Ind. 658; *Hooper* v. *State,* 56 Ind. 153.    The rule is well settled that in the construction or interpretation of a criminal statute all reasonable doubt which may arise in respect to its meaning must be resolved in favor of the person accused thereunder.

I recognize the rule of the law which affirms that the title or right to all animals, birds, fowls, or fish, *ferae naturae* is held by the State, the sovereign power, in trust for the benefit of all the people of the State, and that the latter, by its legislature, may impose such conditions, regulations, or restrictions as may be deemed proper or necessary in respect to the taking or having in possession any of such animals, birds, fowls, or fish, and that he who acquires the ownership or possession, under such imposed conditions, regulations, or restrictions, will be held to be subject thereto, and his title or right of possession will be controlled thereby.

But that is not the question involved in this appeal. It may be conceded that the State has the power to make the possession of quails in the close season unlawful, although such possession was acquired in the open season, and continued over into the close period. But this concession does not solve the question involved in this appeal, which is: Can it in reason be asserted, under the rule governing the interpretation of statutes, that the legislature, under the statute in dispute, intended, under the circumstances, to make such possession unlawful? That this question must be answered in the negative to me appears to be quite evident and beyond successful controversy. Had the legislature intended by this law to make it unlawful for a person to have in his possession quails taken during the open season, considering the importance of the question, it may be assumed that the legislative will to this effect would have been expressed or declared in clear and positive language.

A statute of the state of Maine prohibited, under penalty, the hunting or killing of deer between the 1st of January and the 1st of October. By this act it was also made an offense for any person to carry or transport the carcass or hide of any deer during the prescribed close period. One Young was prosecuted under the statute for transporting on February 17, 1883, the carcasses of two deer. It was shown by the evidence that he killed and came into the possession of one of the animals in the state of Maine on the 30th day of the previous December, and of the other animal on the 31st day of the same month; that the carcasses of the deer were taken by him from the place where he had killed them in that state to his own home, and there remained until February 17th following, and then transported by him to the railroad station to be shipped by rail to Boston, Massachusetts, for the purpose of sale. The case was appealed to the supreme court of Maine. See *Allen* v. *Young,* 76 Me. 80. In deciding the question as therein involved, which was identical with the one in issue in the

case at bar, the court said: "The question is whether, if deer are killed during the time when it is lawful to do so, it is a crime to carry or transport the hides or carcasses from place to place in this state during the time when it is unlawful to kill them. We think it is not. True, the transportation at such a time seems to be within the letter of the law; but we think such could not have been the intention of the legislature. We can see no possible motive for making such transportation a crime. We can readily see that it would be in furtherance of the purposes of the act to make such transportation *prima facie* evidence of guilt, and thus throw the burden of proof upon the party to show his innocence, as is done in section five with respect to possession; but we fail to see any motive for making the mere transportation of the hide or carcass of a deer from one place to another a crime when the deer has been lawfully killed and is lawfully in the possession of the one who transports it. Certainly one may reasonably doubt whether such could have been the intention of the legislature; and the act being a penal one, a reasonable doubt is sufficient to make it the duty of the court to adopt the more lenient interpretation, and construe the term, 'such animal' as meaning an animal unlawfully killed, as was done in construing a similar statute in *Com.* v. *Hall,* 128 Mass. 410."

In the case of the *State* v. *McGuire,* 24 Ore. 366, 33 Pac. 666, 21 L. R. A. 478, the defendant was prosecuted, under a statute of that state, for having in his possession certain fish during the period when the law made it unlawful for any person to receive or have any such fish in his possession. The defendant offered to prove, as a defense to the prosecution, that the fish in controversy had been lawfully caught in the open season and belonged to fish dealers in the city of Portland and had been by such dealers placed in his possession only for the purpose of cold storage. It was held in that case that by reason of the fact that the fish were caught in the open season, the possession thereof thereafter

during the prohibited period would not render the possession unlawful within the intent of the statute. The cases *pro* and *con* in respect to the law upon the question involved are fully collected and reviewed by the court in that appeal. The trial court, it seems, in construing the statute involved in that prosecution, held that the possession of the fish by the defendant during the close season constituted a crime, regardless of the fact as to when or where they were caught or taken. The supreme court, in considering the construc-- tion placed upon the statute by the lower court said: "The effect of this construction is to declare that, in order to pro- tect the salmon in this state, it was the intention of the statute to punish the offering for sale, or the having in pos- session, of salmon of the varieties specified, during the prohibited seasons, no matter whether they were lawfully caught within or without the state; in a word, that it was the intention of the legislature to punish the mere possession of salmon which had been lawfully caught or taken. It ought to require plain, unambiguous, and mandatory lan- guage to justify any court in declaring fish or game lawfully caught or taken to be the subject of an offense, by the simple possession of it. A construction leading to such injustice ought to be avoided if it can be reasonably done. Salmon fish is an article of food, and the law interdicting the catch- ing of them at certain seasons is not because they are unfit for use, or unwholesome, but to protect and preserve such fish in this state."

In the case of *People* v. *O'Neil,* 71 Mich. 325, 39 N. W. 1, the defendant was accused of having in his possession, in violation of a statute of the state of Michigan, a number of quail in the month of April, 1888, this latter month, under the law, being within the close season in that state. The evidence established that he had purchased these birds in the state of Missouri and had received them into his possession in the month of December, 1887, this latter month being within the open season in the state of Michigan. The su-

preme court in that appeal held that under the facts the possession was not unlawful within the spirit or meaning of the criminal statute involved. Champlin, J., speaking as the organ of the court, in respect to the interpretation of the law, said: "A construction of a statute which leads to such harsh consequences, and punishes with severe penalties acts which are confessedly innocent in themselves, must not only be unambiguous, but mandatory; and the act done must be not only within the letter, but within the spirit, of the law to gain my assent to its enforcement. Our statute requires no such strict or harsh construction. The articles interdicted are articles of food, and the interdiction is not because such food is unwholesome, and therefore detrimental to the public health, but the whole end and object of the legislation is to protect and preserve game in the state of Michigan." That eminent and learned jurist, Judge Campbell, in concurring in the opinion of his associates, said: "I do so for the further additional reason that I do not think it would be competent for our legislature to punish the possession of game which was lawfully captured or killed. Having become lawful private property, it can not be destroyed or confiscated, unless it becomes unfit for use, any more than other property can be destroyed. I do not think the cases to the contrary are reasonable or sound."

*Commonwealth* v. *Wilkinson,* 139 Pa. St. 298, 304, 21 Atl. 14; *James* v. *Wood,* 82 Me. 173, 19 Atl. 160, 8 L. R. A. 448; *Commonwealth* v. *Hall,* 128 Mass. 410, also sustain the doctrine asserted and adhered to, in the cases from which I have quoted. It can not be said that there is any real merit in one of the reasons given for the construction placed upon the statute by the majority opinion, which reason is to the effect that such a construction is necessary in order to prevent an evasion of the law, or, in other words, to enable the State more successfully to secure convictions thereunder. That is a question more properly for the consideration of the legislature.

If it had been intended by the lawmaking power to make the mere possession of quail during the prohibited season a criminal offense, without any regard to where, when, or how lawfully such game had been killed or taken, surely language could and would have been employed clearly to express such intention.

Under the holding in the prevailing opinion, the hunter who kills any quail on December 31st, the end of the open season, intending to eat them at his New Year's dinner, will discover that he is in a position of peril. He will be compelled either to eat the birds on the day he killed them, cremate them, or in some other manner destroy them, or, at least, he must in some way rid himself of their possession ere the clock strikes the hour of midnight, otherwise if he continues the possession of the birds over until the beginning of the next day he will be a violator of the law and liable to be subjected to its penalty.

In many of the cases cited in the majority opinion, the legislature appears, in the particular statute, by some provision to have emphasized its intention to make the law apply to and include game, without regard to the question as to when, where, or how the same had been killed, taken, or received.

Without further commenting upon the question, I am convinced that the conviction of the appellant in the trial court, under the facts, was wrong, and that the judgment ought to be reversed.