# HIRAM W. TYLER *vs.* THE STATE OF MARYLAND.

*Oyster Law—Possession of Unculled Oysters Brought From Another State.*

The Act of 1900, ch. 380, sec. 8, makes it a misdemeanor for any person to have in his possession oysters containing more than five per cent of shells and oysters less than two and one-half inches from hinge to mouth. *Held*, that this provision was intended to apply only to oysters taken from the waters of this State, and does not make it unlawful to possess oysters below the designated size lawfully taken from the waters of another State and brought into this State.

Appeal from the Criminal Court of Baltimore.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Bernard Carter* and *Albert S. J. Owens*, for the appellant.

*Isidor Rayner, Attorney-General,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant was indicted in the Criminal Court of Baltimore City for unlawfully having oysters in his possession which contained more than five per cent of shells, and oysters less than two and one-half inches from hinge to mouth. The indictment was found under section 8 of chapter 380 of the Acts of 1900, which provides that "Any person who shall have oysters in his possession which contain more than five per cent of shells, and oysters less than two and one-half inches from hinge to mouth, which for the purpose of this article are declared to be unmerchantable oysters, shall be guilty of a misdemeanor, and in ascertaining such percentage the officers of the oyster police force, and the measurers and inspectors are hereby authorized and directed to select such amount of oysters from any pile, hold, bin, house or other place as he may think proper, and to require the same to be culled and disposed of as provided in section 9 of this article, and any person violating the provisions of this section shall be subject to the penalties and fines as provided in section 9 of this Article in precisely the same manner as if he were a captain of a boat."

Section 9 makes it unlawful for any person to receive a cargo or any part of a cargo of oysters unless an inspector or measurer shall be present who shall determine whether the oysters have been properly culled and prescribes penalties to be imposed upon the captain, master or person in charge of the oysters for a violation of its provisions. These penalties consist of the payment of a fine and the return by the captain or person in charge of the cargo of such portion of the oysters as are under the merchantable size to the beds from which they were taken and the scattering of them upon such beds under the direction of a deputy commander of the oyster police.

The appellant demurred to the indictment and the Court

overruled his demurrer.   He then filed a special plea assert-
ing as his defense that the oysters, for the possession of which
he had been indicted, formed part of the cargo of a schooner
of which he was the captain, and that the oysters had been
taken from the waters of the State of Virginia by citizens of
that State who had complied with its laws as to the taking of
oysters in its waters, and had been sold to him by such citi-
zens of Virginia at Manchodoc creek in that State and there
put upon his boat and from thence brought by him to Balti-
more.   To this plea the State filed a demurrer which was sus-
tained *pro forma* by the Court.   The case was then submitted
under a plea of *non cul* to the Court which found the traverser
guilty and imposed a fine upon him and he appealed.

The important issue in the case is the one raised by the
special plea to the indictment which presents for our consider-
ation the question whether the statute under which this in-
dictment was found makes it unlawful to have in possession
unculled oysters which were not taken from the waters of this
State but were lawfully taken from the waters of another State
by its citizens and afterwards brought into Maryland.

We recently held in *Stevens* v. *The State*, 89 Md. 669, that it
is entirely within the power of the State to prohibit the having
in possession or exposing to sale in this State within the closed
season game which has been taken either within the State or
elsewhere.   The same principle would apply to a prohibition
against having in possession oysters of which more than a
specified portion were of a size declared by law to be unmer-
chantable.   The real question, therefore, to be determined is
whether the law now under consideration was intended to ap-
ply to oysters lawfully taken from waters outside the limit of
this State.

A careful examination of the law satisfies us that it was in-
tended to apply only to oysters taken from Maryland waters.
The law does not in express terms apply to oysters taken from
waters outside of the State.   In that respect it differs from the
Act of 1898, ch. 206, passed for the better protection of birds
and game animals which was upheld by us in *Stevens'* case,

and which by its terms makes it unlawful to have in posses-
sion or expose for sale during the closed season birds or game
animals shot or killed in this State *"or in any other State, ter-
ritory or country."*

Before the passage of the Act of 1898, the game laws of
the State prohibited in broad terms the catching, killing or
having in possession "any rabbit" during the closed season.
Under the law as it then stood, a dealer in game in Baltimore
City was indicted for having rabbits in his possession during the
closed season and it appearing that the rabbits had been law-
fully killed in West Virginia, we held that the traverser was not·
liable. *Dickhaut* v. *State*, 85 Md. 451. In that case after a
careful review of the decisions in other States upon similar
statutes we came to the conclusion that as the purpose of the
statute was to protect the game in this State, its prohibition
must be construed to relate only to such game. We further
held that "only the plainest and most mandatory language of
the lawmakers would justify any Court in holding that the
mere possession of game lawfully killed would constitute an
offense."

The Act under which the indictment was found in the
present case was passed as an amendment to Art. 72 of the
Code, the obvious purpose of which was to so regulate the
taking of oysters *from the waters of this State* as to preserve
for the benefit of its citizens the oyster beds which have proven
to be a most valuable source of both food and occupation to
the inhabitants of the counties bordering on the Chesapeake
bay and its tributaries. Experience in this field demonstrated
the fact that taking from the beds the small oysters which
were not fully matured, tended to the early exhaustion of the
sources of supply of oysters and the ultimate destruction of
the important industries depending upon a continuance of the
supply. Accordingly, we find that from 1880 down to the
present time, a series of laws have been passed commonly des-
ignated as Culling Acts, requiring oysters of small size to be
separated or culled from the cargoes of the vessels employed
in oyster fishing and returned to the beds from which they

were taken.   These laws in order to effectuate the purposes
for which they were enacted contain various provisions as to
handling and dealing in the oysters and to that end the Acts
of 1890, ch. 602 and 1894, ch. 380, like the one now under
consideration, prohibit having unculled oysters in possession.

If we turn now to Art. 72 of the Code, as amended by the
Act of 1900, chap. 380, we find that sec. 1, which provides
for issuing licenses to tongers, refers by express terms only to
taking oysters "in any of the waters of this State." Sec. 19,
which authorizes the licensing of dredgers, goes further and
specifies the particular waters in this State in which the dredg-
ing may be done.   Sec. 7, which provides for culling the oys-
ters and returning the small ones to their natural beds, affects
by its express terms only "oysters taken from any of the
waters of this State."   Now sec. 8, under which the present
indictment is found was obviously intended to more effectually
secure the culling of the oysters mentioned in sec. 7, which
were those taken from the waters of this State.   This is made
still more manifest by the provision in sec. 9, requiring the
captain or person in charge of the cargo containing the exces-
sive proportion of small oysters to take them back to their
natural beds and there scatter them under the direction of an
official of this State who could have neither power nor juris-
diction beyond the limits of the State.   The just and rational
inference, therefore, is that the unculled oysters referred to in
sec. 8, were those taken from the waters of this State.

The Attorney-General contended that sec. 8, intended to
prohibit the mere having in possession unculled oysters from
whatever source obtained as a necessary means of enforcing
the culling of oysters taken in the waters of this State.   It
would certainly have been an appropriate and efficient aid to the
effectual enforcement of the culling of the oysters taken in this
State to have prohibited having in possession unculled oysters
of any kind or taken from any source and under the rulings of
this Court in *Stevens' case* it would have been within the
power of the State to have done so.   But any such prohibition
to have been effectual must under the rulings in *Dickhaut's*

*case* have included in plain and distinct terms all unculled oysters from whatever source obtained and that has certainly not been done in sec. 8.

The learned Judge below erred in sustaining the demurrer to the special plea of the traverser and for that reason the judgment appealed from must be reversed.

The appellant also contended that the law now under consideration was unconstitutional because it imposed different penalties upon the several classes of persons who were prohibited from having unculled oysters in possession and that the classification thus made was unreasonable, and that for that reason the demurrer to the indictment should have been sustained.

As we have determined that the judgment must be reversed for the reason already stated we deem it unnecessary to pass upon the constitutionality of the law which this Court has determined should not be done unless it is necessary for the decision of the case before it.    *State* v. *Insley*, 64 Md. 30.

> *Judgment reversed with costs, without ordering a new trial.*

(Decided April 17th, 1901.)