(99 App. Div. 516)

### VROOM v. TILLY et al.

(Supreme Court, Appellate Division, Second Department. December 15, 1904.)

1. FISH—OYSTER BEDS—OWNERSHIP.

The ownership of the land whereon oysters are deposited is not a prerequisite to the ownership of the oysters, and the fact that a person is guilty of trespass in planting and cultivating oysters on the lands of another does not authorize the owner to take the oysters to his own use, though the owner might compel him to take them up or remove them as a nuisance.

Woodward, J., dissenting.

Appeal from Special Term, Suffolk County.

Action by Charles H. Vroom against John Tilly and another for conversion. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Henry J. McCormick, for appellants.

S. Leroy Ackerly, for respondent.

JENKS, J. The plaintiff cultivated oysters on 40 acres of land under the waters of Long Island Sound, upon the supposition that the tract was within the bounds of lands granted to his licensors for such pursuit by the state. For six years he took out a large quantity of oysters. The defendants had acquired from the state a similar franchise in lands adjacent to those of the plaintiff. As matter of fact, the said 40 acres were within the bounds of the defendants' lands, although there was no indication thereof. This fact was ascertained by an official survey obtained by the defendants six years after the plaintiff had begun cultivation. Thereupon, in the face of the plaintiff's protest and explanation, the defendants took up for their own use the oysters from this tract. This action is for a conversion of those oysters, and the plaintiff has gained the judgment. The court found that the oysters taken up by the defendants were the result of the plaintiff's cultivation, and I think that the evidence justifies this finding.

The learned counsel for the appellants concedes that "the rule governing ownership of oysters wrongfully planted or placed on the lands under water belonging to another is that a man does not lose title to personal property which can be identified by the fact that he is a trespasser"; but he insists that there is a distinction between the case of a man planting or placing oysters on such lands, and a man who, like the plaintiff, simply prepares such land, and, as the result of such preparation, gathers the germs floating in the water, which under his care and culture develop into oysters. I think, however, that these oysters were the property of the plaintiff. Grace v. Willets, 50 N. J. Law, 414, 14 Atl. 559; McCarty v. Holman, 22 Hun, 53. In Grace v. Willets, supra, the plaintiffs deposited a boat load of oyster shells, and marked the

¶ 1. See Fish, vol. 23, Cent. Dig. §§ 12, 15.

deposits by stakes, and the germs of oysters, floating in the water, attached themselves to the shells. The court, per Van Syckel, J., say:

"Assuming, as we must, from the case as presented, that it was necessary to deposit the natural shell in order to attract the germ or sprout, and thereby in the order of natural growth produce the oyster, it seems as incontrovertibly to follow that the full-grown oyster is the property of him who planted the shell, as that the oyster when of marketable size belongs to him who planted it in its infant state, or as that the title to the colt is not lost by its growth and development into the horse."

In McCarty v. Holman, supra, the plaintiffs planted both seed oysters and many scallop shells. Gilbert, J., speaking of the spat, said:

"They are wafted away by currents, and would be lost unless they found an object to which they could adhere. The plaintiffs provided means within the bed which they planted to save the spat of oysters, and we are of opinion that their property in the oysters grown from the spat so preserved is quite as good as that in the parent oysters, whether the spat proceeded from oysters which they planted or from other oysters."

Ownership of the land whereon the oysters are deposited is not a prerequisite to ownership in the oysters. Davis v. Davis, 72 App. Div. 593, 76 N. Y. Supp. 539; McCarty v. Holman, supra; Fleet v. Hegeman, 14 Wend. 42; State v. Taylor, 27 N. J. Law, 117, 72 Am. Dec. 347; Post v. Kreischer, 103 N. Y. 110, 8 N. E. 365. If the plaintiff were guilty of trespass in planting or cultivating oysters on the lands of another, such fact does not authorize the owner to take those oysters to his own use (Davis v. Davis, supra), although the owner might compel him to take them up, or might remove them as a nuisance (State v. Taylor, supra; Sutter v. Van Derveer, 47 Hun, 366). Oysters reproduce by eggs, from which there hatches out a small, free-swimming larva, becoming in a few days spat. These seek and attach themselves to some solid support, where they remain. Encyclopedia Americana. The property right in such oysters has been said to be akin to that gained over animals feræ naturæ (McCarty v. Holman, supra; Fleet v. Hegeman, supra), though this principle has been sharply criticised by the Supreme Court of New Jersey in State v. Taylor, supra. If we regard them as feræ naturæ, then the plaintiff has reclaimed them so far as is possible to such animals, in that he has caught them and confined them; and therefore the defendants cannot thereafter appropriate them, even though they are upon their lands. This question is well discussed by Nelson, J., in Fleet v. Hegeman, supra.

The judgment should be affirmed, with costs.

HIRSCHBERG, P. J., and BARTLETT and HOOKER, JJ., concur.

WOODWARD, J. (dissenting). I am unwilling to concur in the opinion about to be handed down by this court, because, in my judgment, it is fraught with great mischief, and is intended to defeat the policy of the state in respect to its oyster fisheries. It

is undoubtedly true that at common law oysters planted in tidal waters on a well-marked and clearly defined bed, where there were no natural oysters before, were the personal property of the planter, and he might maintain an action for their conversion. Sutter v. Van Derveer, 47 Hun, 366, 368, and authorities there cited. But in the year 1887 the state of New York undertook to "promote and protect the cultivation of shell-fish within the waters of this state" (chapter 584, p. 797, of the Laws of 1887), and by the provisions of this act the common law, in so far as it relates to this subject, was abrogated, and the rights of oystermen became regulated by this act. If I am right in this proposition, all of the cases decided before the modification of the common law, and which have been relied upon to support the subsequent decisions, are important only as affording a knowledge of what the law was, and not what it is to-day. It is important, therefore, to consider the provisions of the statute.

Chapter 584, p. 797, of the Laws of 1887, provided in its first section that the commissioner of fisheries theretofore appointed, and his successor in office, shall be "known as the Shell-Fish Commissioner," and it was his duty to—

"Finish and complete the survey now being made under his direction of all the lands under the waters of the state suitable for use for the planting and cultivation of shell-fish, and shall make a map thereof as heretofore provided. He shall finish and complete the survey now being made of all the beds of oysters of natural growth located in the waters of the state, and such beds of oysters of natural growth shall be set apart and preserved, and shall not be deemed to be included in the lands for which franchises are to be sold under the provisions of this act. Said commissioner shall ascertain the occupants of all lands claimed to be in the possession or occupation of any person or persons, and no grant of lands so occupied or possessed shall be made, except to the actual occupant or possessor thereof; provided said occupant or possessor, within one year from the passage of this act, shall make application for, and purchase the same."

That is, the state assumed dominion over all of the waters of this state suitable for oyster culture; undertook to preserve to the public the natural oyster beds, and to guaranty to those who had staked out claims under the common law the right to purchase a franchise for the same at a nominal figure, provided application was made within one year. This act, by necessary implication, denied the right of any individual to mark out and appropriate to his own use any of the lands under the waters of this state suitable for the planting and cultivation of shellfish, at least in so far as such waters were embraced within the boundaries of the map which was authorized and directed to be made of such waters. In other words, the common-law right to plant and cultivate oysters was denied to individuals generally, and in its stead a special privilege was granted to such as should comply with the conditions of the statute. The act, after providing for the appointment of an additional commissioner, who should be an expert oysterman, and for a meeting of such commissioners for the purpose of formulating such rules and regulations as shall be deemed necessary as preliminary to hearing and granting applications for perpetual

franchises for the purpose of shellfish cultivation on the lands under the waters of this state, declared that:

"After such rules and regulations shall have been agreed upon and formulated, the said commissioners of fisheries shall proceed to grant franchises for the purposes of shell-fish cultivation, as hereinafter provided. But no such franchise shall be granted until one month's notice of the application for a franchise or franchises shall have been given by posting in a conspicuous place, in the office of the shell-fish commissioner, and in the office of the town clerk of the town nearest to the lands applied for."

It was also provided that these franchises were to be granted only to those who had resided in this state at least one year, and the amount of land to any person or corporation was limited to 250 acres at any one time, so that every individual, firm, or corporation engaged in shellfish culture on the lands under water within this state since the year 1887 must, if obedient to the law, have operated under a franchise granted upon notice, and under rules and regulations which, it is fair to presume, required that such franchises should be determined with reference to the map directed to be made, and presumably on file in the office of the shellfish commissioner. This view seems irresistible, for it is provided that:

"When the conditions precedent to the granting of franchises, mentioned in the foregoing sections, have been complied with, the commissioners of fisheries are hereby empowered, in the name and behalf of the people of the state of New York, to grant, by written instruments under their hands and seals, perpetual franchises for the purposes of shell-fish cultivation in the lands applied for under the waters of the state, for the consideration of not less than one dollar per acre, if the lands are unoccupied or unused, and not less than twenty-five cents per acre if the lands are in present use and occupation, and the right to use and occupy said grounds for said purposes shall be and remain in the said grantee, his legal representatives or successors forever: provided only that the said grantee, his legal representatives or successors shall actually use and occupy the same for the purposes of shell-fish cultivation, and for no other purpose whatever. * * * Immediately after the receipt of the aforesaid instruments of conveyance, the grantee shall at once cause the grounds therein conveyed to be plainly marked out by stakes, buoys or monuments, which stakes, buoys or monuments shall be continued by said grantee, his legal representatives or successors."

The plaintiff in this action acquired all of his right to plant and cultivate oysters under the provisions of this statute by reason of the original grant made to Elizabeth V. Merrill on the 8th day of December, 1891, which right was assigned to John H. Post in 1896; and the plaintiff and his uncle Joseph Vroom, under a license from Post, undertook to locate the Merrill tract, and subsequently deposited a quantity of shells upon the Housman tract, which had been granted by the state to Nicholas P. Housman at the same time that the Merrill grant was made, upon the mistaken theory that they were making the deposit upon the latter tract. Later the plaintiff took an assignment of the Merrill tract from Post, as well as an assignment of his uncle's interest, and brought this action for the conversion of 1,600 bushels of oysters by the defendants, who claim to be the owners of the Housman grant. The plaintiff had absolutely no right to plant or cultivate oysters anywhere within the public waters of this state, except upon the lands under

water which were granted to Elizabeth V. Merrill. He was her successor, and the statute made it his duty to maintain the "stakes, buoys or monuments" which the grantee, under the statute, was bound to place "immediately after the receipt of the aforesaid instruments of conveyance." Section 6, c. 584, p. 798, Laws 1887. This was one of the conditions of his right to undertake oyster culture, and if he failed to stake out and indicate the lines of his franchise as provided by law, and thus carried his operations over his line, he has only himself to blame; and he cannot plead good faith as a justification, for he was bound to know the law. The fact that the owners of the Housman tract had failed to erect stakes or monuments defining their boundaries can give the plaintiff no rights, where he has himself failed to comply with the requirements of the law. The Housman tract is bounded on the north by the south line of the Merrill tract, as well as by a township line; and, if we assume that the Housman tract had been abandoned or forfeited to the state by reason of a failure to define it and to use it for the purposes provided by the statute, the plaintiff cannot, by a violation of the statute, and through ignorance of a fact which the law makes it his duty to ascertain and point out by stakes, buoys, or monuments, gain any rights outside of the boundaries of his own franchise. Since the abolition of the rule of the common law in respect to these waters, the plaintiff is confined strictly to his franchise; and if he goes outside of its limits, and makes improvements on the franchise of another, or upon lands which are in the custody of the state, he gains no right of property which gives him a right to maintain an action for conversion. It is not necessary to determine whether the defendants had any special rights by reason of their alleged ownership of the Housman tract, or whether the defendants were guilty of conversion as against the state of New York, for, in the view which I take of this question, the plaintiff, by proceeding unlawfully outside of the limits of his franchise, could not gain any property rights in the oysters which were developed upon the Housman tract, and that disposes of this case. The plaintiff, in law, could not make a mistake which would give him any right of property, because the law made it his duty to know and to mark out the limits of his franchise, so that if it be conceded that the evidence would warrant the conclusion that the plaintiff had, in good faith, made a mistake in his boundaries, this would not be a good excuse, for the law does not permit of the mistake. If it should be conceded that the defendants, by reason of their failure to stake out and make use of the Housman tract, had forfeited their rights, neither the plaintiff nor any one else would have the right to stake out the premises and occupy the same for oyster culture without a grant from the state of New York, because in the exercise of its high sovereign powers the state has taken away the common-law right, and has taken this common lying under water under its police regulation; parceling it out under such conditions as, in its judgment, is most likely to conserve the public welfare. To permit individuals to stake out claims outside of their franchises, or to enlarge them by overreaching and

disregarding the plain provisions of the law, is to pave the way for endless friction and constitute a grave menace to the peace and good order of the state.

I find no evidence in this case to warrant the conclusion that the plaintiff has ever planted any seed oysters upon this tract. All that appears to have been done was to scrape the surface, to distribute over the same a quantity of shells, and to catch out starfish, which, I assume, are inimical to young oysters. The authorities seem to be agreed that the oyster is hatched from eggs laid by the female, and fertilized by chance contact with the emissions of the male, and that for a period of a few days after being hatched the young oyster is gifted with a certain power of locomotion. If, during this period, he comes in contact with any substantial substance in the water, he attaches himself to such substance, and then goes through the process of development until he reaches maturity. The shells deposited by the plaintiff outside of his franchise did not produce the oysters which the defendants have taken; their purpose was that of a trap to catch and hold the young oysters during their swimming period of existence, as they were carried through the waters by the tides or currents; and, if we consider the oyster as feræ naturæ, he cannot be said to have been reduced to the possession of the plaintiff by being caught in a trap upon the premises of the defendants, or at least outside of the lawful franchise of the plaintiff. The act of reducing an animal feræ naturæ into possession, where title thereby is created, must not be wrongful, and, if such an act is effected by one who at the moment is a trespasser, no title to the property is created. 2 Am. & Eng. Ency. of Law (2d Ed.) 345, and authorities cited in notes. For the purposes of this action, the defendants, as assignees of the interests of Nicholas P. Housman, must be deemed to be the owners of the franchise known as the "Housman Tract," and upon which it is conceded the plaintiff has deposited these shells, operating, as we have seen, as a trap to catch the infant oyster; and, under the rule last above cited, I am unable to see how the plaintiff has any title whatever to the catch made in such traps. In Rhode Island, where a trespasser placed a box in a tree on another's land for bees to hive in it, it was held that he could not maintain an action for trover against a third person for taking bees and honey from the box. Rexroth v. Coon, 15 R. I. 35, 23 Atl. 37, 2 Am. St. Rep. 863. And I am unable to distinguish this case, in principle, from the one now before us. The plaintiff is a mere trespasser setting traps upon the premises of the defendants, and he gains no property right in the catch of these traps; and the plaintiff, having operated outside of his franchise rights, is not in a position to complain because the defendants, rather than some other person, have benefited by reason of his aid to the producing capacity of the lands in question. It has been held by high authority in England that game found and killed by a trespasser under such circumstances that it would be the absolute property of the owner of the soil if it had been found and killed by such owner, instead of by the trespasser, does, in law, become the absolute property of the proprietor of the

soil or privilege immediately on its being so caught and killed by the trespasser. Blades v. Higgs, 11 H. L. Cas. 621; 34 L. J. C. P. 286; 11 Jur. N. S. 701; 12 L. T. N. S. 615; Sutton v. Moody, 1 Ld. Raym. 250. And it is difficult to suggest a distinction in principle between oysters caught in a trap upon the premises of the defendant, and game killed upon the premises of the owner of the soil or of the privilege.

It should be the purpose of the court not so much to do abstract justice in a particular case as to establish and make certain the law and the public policy of the state, and in the present instance I am of opinion that both purposes will be served by a reversal of the judgment. The plaintiff, by a disregard of duty in ascertaining and marking the limits of his own franchise, has trespassed upon the franchise of another; and the mere fact that this trespass has resulted in improving the value of the defendants' franchise does not justify the trespass, nor give the plaintiff any right of property in the catch of oysters which has resulted. The plaintiff had rights within the limits of his own franchise which it was the duty of the state to protect, but, when he disregarded his duty and became a mere trespasser, the law owed him no further obligation; and the courts should now refuse to grant him a remedy against those who have merely exercised their rights under their franchise, and have gathered the oysters which have been developed within the limits fixed by the grant. To do otherwise is to defeat the policy of the state, which places upon such holder of a franchise the duty of knowing and designating the limits of his franchise, and makes each case depend upon the evidence of good faith on the part of the trespassers, when, as I have pointed out, there can be no such good faith, because it constitutes a violation of a duty imposed by law.

The judgment appealed from should be reversed.