[No. 29866. *En Banc.* January 9, 1947.]

JOHN L. WIEGARDT *et al., Appellants* v. THE STATE OF WASH-
INGTON and MILO MOORE, *as Director of Fisheries,
Respondents.*[1]

[1]Reported in 175 P. (2d) 969.

*Fred M. Bond* and *W. H. Abel,* for appellants.

*The Attorney General* and *Lady Willie Forbus, Special Assistant,* for respondents.

ROBINSON, J.—In this cause, the trial court sustained a demurrer to an amended complaint on the ground that it did not state facts sufficient to constitute a cause of action, and, the plaintiffs thereupon electing to stand on the complaint without further pleading, entered an order of dismissal. From that order, plaintiffs appeal.

The complaint alleges that the plaintiff marital communities have, as copartners during the times therein mentioned, been engaged in the business of propagating, cultivating, raising, developing, and marketing oysters in Pacific county, and have owned, and still own, a large and substantial oyster bed abutting upon tidelands of the state of Washington, known as the Long Island Oyster Reserve. It is further alleged that, during the past twelve years, the plaintiffs, at a time when the boundary monuments between their oyster beds and the abutting state land were not distinguishable, by inadvertence planted oysters on the state reserve, which at the time did not contain any bed of natural oysters and had never been used by the state to propagate oysters. For reasons hereinafter shown, they claim that these oysters are their personal property and, in this action, sought to enjoin the state and its director of fisheries from selling or otherwise disposing of them.

As the single question involved is the sufficiency of the complaint, we quote the major portion thereof:

"6. That said plaintiffs in good faith planted oysters upon said State tide lands and which were waste lands *and inside of the reserve hereinafter described and mentioned without knowing they were in said reserve and without knowing that said plaintiffs did not own said lands and premises and believing they were planting the same upon lands and premises owned by the plaintiffs.* Plaintiffs have cultivated said oysters at all times and have been in the sole, exclusive and actual possession thereof and still are in the actual possession of said lands and premises and that the same constitutes an artificial bed of oysters and not a natural bed.

"7. That said plaintiffs' oyster lands are contiguous lands and adjacent to said tide lands upon which they planted said oysters by inadvertence and without the knowledge of the true boundary and which said tide lands are within the confines of what is known now as the Long Island Oyster Reserve. . . .

"9. That Milo Moore as Director of Fisheries purporting to act under the session laws of the State of Washington for the year 1945 and being Chapter 199 has advertised for sale upon September 21, 1945 *the oysters upon the oyster reserves of the State of Washington and which include those planted and propagated by the plaintiffs in good faith* and unless enjoined and restrained by the court the Director of Fisheries will on said date proceed to sell and will sell the plaintiffs' oysters *upon said State Oyster Reserve* without hearing or determination of the good faith of said plaintiffs in planting, propagating and owning said oysters. That such sale or any sale by the Director of Fisheries will work irreparable injury and damage to said plaintiffs and that they will be without remedy in law or in equity if such sale takes place.

"10. That said lands and the oysters thereon and which oysters are owned by said plaintiffs, are the same ones that are described and mentioned in the sale advertised by the Director of Fisheries to take place on the 21st day of September 1945 and in the description and offering of said oysters for sale by said Director of Fisheries it is designated as the Long Island Reserve and the parts of the same on which said plaintiffs own the oysters are described in said notice of sale in numbers fixed by the Director of Fisheries as follows: Numbers 2, 3, 4, 5, 6 and 7 of Long Island Reserve and that all the oysters upon each and all of said numbers five to seven inclusive so described and being offered for sale by said Department of Fisheries are the same lands and has reference to the same oysters as above

mentioned in this complaint and which are now owned by the plaintiffs.

"11. That the value of the plaintiffs' oysters thus planted and propagated in good faith as above described is alleged to be worth approximately $10,000.00 and that said plaintiffs will be damaged in that amount if said sale is not restrained and the defendants prohibited in carrying out the same.

. . .

"13. That all of said oysters above described are personal property and are not real property and property that belong to said plaintiffs and not the property of the State of Washington.

"14. That said plaintiffs are the owners of all of said oysters so planted in good faith as above described and mentioned and are entitled to remove the same therefrom and that this action is brought for the purpose of establishing plaintiffs' right to said oysters and to remove them from said lands and premises. That said plaintiffs are able and willing to compensate the State of Washington for whatever actual use and value said state's lands are worth and will pay the same promptly upon the same being determined and settled by the court.

"15. That said plaintiffs do not have any plain, speedy or adequate remedy at law or any remedy whatever except the one sought in this proceeding." (Italics ours.)

Plaintiffs were granted a temporary injunction, which has been continued in force by the furnishing of an additional bond, as directed by the order appealed from.

It will be noted that the demurrer admits, in addition to the general allegations, the following: (1) that the oysters claimed by the plaintiffs as their personal property were planted, and are situated, on a state oyster reserve; (2) that there was, and is, no natural oyster bed on the reserve; (3) that it was not otherwise occupied for purposes of trade or commerce; and (4) that the planting was done in good faith.

Plaintiffs admittedly rely upon § 109 of chapter 31, Laws of 1915, p. 113, Rem. Rev. Stat., § 5763 [P.P.C. § 556-17], which reads as follows:

"When any person has, acting in good faith, planted oysters on tide or shore lands not containing any bed of natural oysters belonging to the State of Washington, and

not otherwise occupied for purposes of trade or commerce, *such oysters shall, pending the sale, lease or reservation of such lands by the state, be considered as personal property,* and the unauthorized taking of the same shall subject the offender to civil and criminal prosecution, as in any similar case of violation of property rights: *Provided,* That the grounds holding the oysters have been kept suitably marked by stakes or other landmarks; but such stakes or other landmarks having been removed by accident or design shall not excuse any person from wrongfully taking the oysters thereby marked, if he knew the ground to have been planted with oysters." (Italics ours.)

The above section was lifted bodily, and without change, from chapter 29, p. 46, Laws of 1895, being § 1 of that act. It appears in Ballinger's Annotated Codes and Statutes of Washington as § 3366, and is found in all succeeding codes. It has, therefore, been in effect for more than fifty years. We have found no case in which its language has been construed, and counsel have cited none.

In our opinion, this case turns wholly upon the words we have italicized in quoting the section upon which the plaintiffs rely:

" . . . such oysters shall, pending the sale, lease or reservation of such lands by the state, be considered as personal property, . . ."

What are "such lands"? The state says that they are plainly the "tide and shore lands," as designated in the second line of the section, and not oyster reserves. The conflict between the parties on this point is well set out in appellants' brief in the following language:

"The argument below for respondents was: That the statute did not apply for that the term 'tide and shore lands' did not include an oyster reserve, and that the statute did not protect the planter when the bed of oysters planted by him was not suitably marked by stakes or other landmarks.

" 'Tide or shore lands' is a generic term and includes all lands from ordinary high tide line to the low tide line. Oyster reservations set up by the state under sec. 102, ch. 31, Laws 1915, are tide lands devoted to a special purpose viz: the raising of seed oysters, and do not cease to be tide lands because of such use."

■ The appellants' answer to the state's contention appears at first sight to be plausible, and perhaps adequate. Upon mature consideration, however, we are of the opinion that the position taken by the state is correct, for the following reasons: The pivotal word in the language under construction is "pending." "Pending," in certain situations, depending upon the context, means "during"; in others, it means "until" or "while awaiting," and this is its more modern usage. Webster's New International Dictionary (2d ed.), 1945. Did the legislature mean "such oysters shall," *during* "the sale, lease or reservation of such lands by the state," be considered as personal property, or did it mean "such oysters shall," *until* "the sale, lease or reservation of such lands by the state," be considered as personal property? We think the legislature meant *until* the sale, lease, or reservation by the state. *During* the sale would seem to have no point. But whichever meaning we adopt, it is clear that the lands contemplated by "such lands" were lands still subject to "sale, lease or reservation." In a previous section of the act, in fact, the identical section which appellants cite in their brief to refute the state's contention that "such lands" comprehend only tide and shore lands, we find the following:

". . . all the oyster reserves are hereby forever reserved from sale or lease." Laws of 1915, chapter 31, § 102, p. 110 (Rem. Rev. Stat., § 5756 [P.P.C. § 556-1]).

Tide and shore lands, the lands mentioned in the second line of § 109, are subject to sale, lease, or reservation, and we have no doubt that they are the "such lands" referred to in that portion of the section under construction. The Long Island Oyster Reserve on which the oysters in controversy are situated, is not subject to lease or sale; nor is it subject to reservation, having already been reserved. The plaintiffs, therefore, cannot establish title by virtue of § 109 of the oyster code.

The appellants suggest no other statutory provision or grant under which they can lawfully claim the oysters which are the subject matter of the action, and we know of none. In their briefs, they seem to place some reliance

on the common law. Quotations from the standard legal encyclopedias are made, and cases cited in their support, that one has a property right in oysters which he has planted on grounds that he does not own, and that they may be the subject of larceny.

Four such cases are cited. The first of these is *State v. Taylor,* 27 N. J. L. 117, 72 Am. Dec. 347. It appears in this case that one Hildreth planted some oysters in tidewaters where no natural oysters grew, and marked and identified the place by stakes. It was held that he had sufficient property in them that Taylor, who raked them up and carried them away, could be convicted of larceny.

In the second case cited, *McCarty v. Holman,* 29 N. Y. Sup. Ct. (22 Hun) 53, it was held that a citizen acquired sufficient title in oysters, which he planted in beds where no oysters grew at that time, and designated their location by stakes, to maintain an action for conversion against one who carried them away.

In the third case cited, *Davis v. Davis,* 72 App. Div. 593, 76 N. Y. Supp. 539, it appears that the state leased to the defendant nine acres under the waters of Jamaica Bay, the lease providing that the lessee should at once cause the said lands to be plainly marked by stakes, buoys, or monuments. This the lessee did not do. The plaintiff, in ignorance of the lease, planted clams on the plot. The defendant removed them and converted them to his own use. It was held that the plaintiff might recover, seemingly upon the theory that he was not a willful trespasser.

The fourth case cited, *Vroom v. Tilly,* 99 App. Div. 516, 91 N. Y. Supp. 51, affirmed 184 N. Y. 168, 77 N. E. 24, is substantially the same as the *Davis* case.

It is to be noted that these controversies were wholly between individuals, that is, that they are not cases where the plaintiff was asserting title to oysters as against the sovereign state. No individual can successfully do that unless he can claim title from some specific grant from the state or relies upon some appropriate statutory provision, such as the plaintiffs, although mistakenly, relied on in this action. We quote from *Leonard v. Earle,* 155 Md. 252, 141 Atl. 714:

"That oysters, as well as fish and game generally, are originally the property of the state, that is, of the people in their sovereign capacity, has been pointed out in previous decisions of this court. *No individual has any property rights in them other than such as the state may permit him to acquire;* and even when they are taken and reduced to possession by an individual, his ownership may be regulated and restrained by appropriate legislation enacted for considerations of state or the benefit of the community. 'In other words, the cases hold that the question of enjoyment in this field is one of public policy and not of private right.' *Stevens v. State,* 89 Md. 669, 672; *Hughes v. State,* 87 Md. 298; *Tyler v. State,* 93 Md. 309, 311; *Windsor v. State,* 103 Md. 611, 618. Such 'things which are *ferae naturae* belong to the "negative community," in other words, are public things subject to the absolute control of the state, which, although it allows them to be reduced to possession, may at its will not only regulate but wholly forbid their taking.' *Ohio Oil Co. v. Indiana No. 1,* 177 U. S. 190, 208."

Our own decisions are in accord with the above. We quote from *State v. Tice,* 69 Wash. 403, 404, 125 Pac. 168, 41 L. R. A. (N. S.) 469:

"The decisions of the courts in this country, so far as they have come to our notice, are all in unison in holding that *there is no private right in the citizen to take fish or game, except as such right is either expressly or inferentially given by the state.* In *State v. Snowman,* 94 Me. 99, 46 Atl. 815, 80 Am. St. 380, 50 L. R. A. 544, the court said:

" 'The fish in the waters of the state, and the game in its forests, belong to the people of the state, in their sovereign capacity, who, through their representatives, the legislature, have sole control thereof, and may permit or prohibit their taking.'

"In *Smith v. State,* 155 Ind. 611, 58 N. E. 1044, 51 L. R. A. 404, the court said:

" 'The *individual has no natural right to take game, or to acquire property in it, and all the right he possesses or can possess in this respect is granted him by the state.' "* (Italics ours.)

Our statutes concerning oyster lands have, from the beginning, been enacted upon the theory that the state became owner of all the tide and shore lands, and every

shellfish therein. This is apparent upon an examination of the early statutes. Code of 1881, §§ 1189-1199, inclusive; Hill's Code, §§ 2177-2179, inclusive; §§ 2585-2597, inclusive. The extent to which the state has exercised its sovereign right as owner, may be illustrated by quoting the following statute enacted in 1891 and which remained in effect until 1915:

"AN ACT to protect persons who have planted oysters upon tide and shore lands in this state prior to March 26, 1890.

"*Be it enacted by the Legislature of the State of Washington:*

"SECTION 1. That any person who has prior to the 26th day of March, A. D. 1890, planted oyster beds upon any of the tide or shore lands of this state, shall be granted a period of not less than six months nor more than three years after said land has been sold by the state, to remove the same; the time to be determined by the commissioner of public lands. And any person shall have the exclusive possession of said tide or shore lands during the time that he has to remove the said oysters under the provisions of this act: *Provided,* That in case any planter of oysters shall fail within the time allotted to remove the said oysters, he shall be deemed to forfeit the same to the purchaser or owner of said lands: *Provided,* That this shall not apply to tide lands within two miles of an incorporated city." Laws of 1891, chapter CX, p. 208.

The above act recognized no common-law right in the planters to remove such oysters, but the state, as the sovereign owner of the same, granted the planters the statutory right to do so, even after the lands on which the oysters had been planted had been sold to private purchasers. We repeat that, in order to show title as against the state, one must found his asserted right upon some state grant or statute.

 Plaintiffs contended in the court below that, even if they did not have a property right in the oysters by virtue of the provisions of § 109, chapter 31, Laws of 1915, they should be entitled to them on equitable grounds. Those contentions are renewed here. As to that matter, we are in

accord with the concise ruling made by the trial judge in his memorandum opinion:

"Plaintiffs urge the equitable doctrine of unjust enrichment. I cannot see any application of this doctrine to the case at bar. All the cases cited in support of this contention apply to improvements or betterments to real property.

"The doctrine of estoppel is also urged, the claim being that the state neglected to improve the reserve and permitted the monuments to become obliterated. There is no law which I have found requiring the state to improve its reserves within any specified time, or, to renew the markings of its boundaries. The basis of all estoppel *in pais* is 'that there is one innocent party and one negligent or wrongful party, and the doctrine means that, when the innocent party has been induced to surrender a valuable right or to change his possession [position] to his prejudice relying upon the acts or representations of the negligent or wrong doing party, then the latter will not be heard to assert the falsity of his acts or representations to the prejudice of the former.' There are no acts on the part of the state defendant here which in my judgment would bring the case under the doctrine of estoppel."

The order appealed from is affirmed.

ALL CONCUR.