# ROBERT N. STEVENS *vs.* STATE OF MARYLAND.

*Game Laws—Prohibition of Sale of Game From Another State in a Closed Season—Constitutional Law—Title of Statute—Indictment.*

The State has the right to regulate the taking or having in one's possession game birds and animals. It may limit the time within which game may be killed, and it may lawfully prohibit the sale or possession of game within a closed season, whether the same be brought from another State or not.

The Act of 1898, ch. 206, provides that it shall be unlawful for any person to have in his possession, expose for sale, sell or buy in Baltimore City and certain counties, certain game birds and animals, including rabbits, during a designated closed season, "whether such birds or game animals so had in possession, exposed for sale, sold or bought, shall have been shot or in any manner caught or killed in that county or in any other county of this State, or in any other State, Territory or country." Defendant was indicted for exposing for sale certain rabbits within the closed season. He offered to prove that the rabbits had been lawfully killed in another State, and that he exposed them for sale in the original package in which they had been received. *Held,* that the Act is a valid exercise of the police power of the State; that in order to preserve domestic game, the ownership of which is in the State, it is a reasonable regulation to prohibit the possession of game brought from another State, and that such prohibition is not a regulation of interstate commerce, and that the Act is not unconstitutional because it is made applicable only in certain counties of the State.

The title of the Act of 1898, ch. 206, was an Act to repeal certain sec-

tions of Art. 99 "of the Code, title 'wild fowls, birds and game,' and to add certain new sections, for the better protection and preservation of birds and game animals." In the body of the Act it was provided that it should be· unlawful to. possess or sell game brought from another State during the closed season. *Held*, that all the provisions of the Act relate to the preservation of birds and game, and that the title thereof is sufficiently descriptive within the Constitution, Art. 3, sec. 29, which provides that every law shall embrace but one subject, and that shall be described in its title.

An indictment which describes a statutory offence in the words used in the statute is sufficient.

Appeal from the Criminal Court of Baltimore (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas Ireland Elliott* and *Harry W. Henderson*, for the appellant.

*George R. Gaither, Jr., Attorney-General*, and *George D. Penniman*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant was indicted for having in his possession and exposing for sale in Baltimore City, during the closed season, certain dead rabbits, contrary to the provisions of section 15*e*, of chapter 206, of the Acts of 1898. He first filed a demurrer to the indictment, which was overruled, and then pleaded *non cul.* and elected to be tried before the Court.

At the trial of the case he offered to prove that the rabbits mentioned in the indictment had been lawfully killed in another State of the Union, and had been shipped to him from that State in an original package, and that he had received and exposed them for sale in that condition, without breaking the package. The State objected to this evidence and the Court sustained the objection, and the verdict and judgment being against the appellant, he appealed.

The Act of 1898, chapter 206, in its opening sections, designates closed seasons for the game birds and animals

therein mentioned, including rabbits, for Baltimore City and the respective counties of the State. Section 15*e* then declares that it shall be unlawful for any person to have in his possession, expose for sale, sell or buy in Baltimore City or the respective counties any of the game birds or animals mentioned in the Act during the closed season for such city or county, "*whether such birds or game animals so had in possession, exposed for sale, sold or bought shall have been shot or in any manner caught or killed in that county, or in any other county of this State, or in any other State, Territory or country.*"

Before the passage of the Act of 1898, the law as it then stood, after referring in its opening sections to game killed within this State, prohibited the catching and killing of game or having it in possession by anyone in Baltimore City or the several counties during the closed season, but the law contained no provisions indicating that it was intended to apply to game lawfully killed outside of this State. When the law in that condition came to be construed by this Court, in the case of *Dickhaut* v. *State*, 85 Md. 451, it was held that game which had been lawfully killed outside of Maryland and shipped into this State was not within the prohibition of the statute, and might lawfully be had in possession or sold during the closed season.

*Dickhaut's case* was decided in April, 1897, and at the next session of the Legislature the Act of 1898, chapter 206, was passed, as its title recites, "for the better protection and preservation of birds and game animals," amending the law as it then stood and adding certain new sections, including section 15*e*, which contains the words which we have already quoted and italicised. It is, therefore, perfectly clear, both from the language of section 15*e* and the circumstances of its enactment, that the prohibition of the Act of 1898 was intended by the Legislature to apply to having in possession or offering for sale during the closed season not only game killed in this State but also game killed elsewhere.

The appellant contends that the construction adopted in *Dickhaut's case* of the law as it stood at that time is applicable to the present law, and should control the case now before us. This contention is not sound because the language now used in the law is too plain to admit of construction, and the circumstances of its amendment clearly declare the present policy of the State to be to prohibit the possession and sale by any one during the closed season of the game mentioned in the law no matter where it was killed.

He further insists that if the law be intended to apply to game killed without and shipped into this State it is in conflict with the Act of Congress commonly known as the Interstate Commerce Law, which was passed in the exercise of the exclusive power conferred on Congress by the Federal Constitution, to regulate commerce among the States. The question presented by this contention is not a new one. Many of the States of the Union have passed game laws which include among their provisions a prohibition of the sale or possession of game during the closed season, and these laws have frequently been before both the State and Federal Courts for construction.

In some of these cases, such as the *Commonwealth* v. *Hall*, 128 Mass. 410, and the *People* v. *O'Neil*, 71 Mich. 331, the statute before the Court merely made the possession of game within the closed season *prima facie* evidence of a violation of the law, and they therefore do not throw much light upon the issue before us, but in different well-reasoned cases, where it was entirely clear that the State law was intended to exclude all game, wherever it may have been killed, from the markets of the State during the closed season, the law has been upheld.

The authorities agree that the ownership of all game animals and birds is in the people in their sovereign capacity, that is, in the State, and no individual has any property rights in game other than such as the State may permit him to acquire, and even when game has been captured and re-

duced into possession by the individual with the permission of the State, his ownership in it may be regulated and restrained by appropriate legislation enacted for considerations of state or the benefit of the community    In other words, the cases hold that the question of enjoyment in this field is one of public policy and not of private right. *Magner* v. *People*, 97 Ill. 320, 333 ; *Ex parte Maier*, 103 Cal. 476; *Phelps* v. *Racey*, 60 N. Y. 10; *Javins* v. *United States*, 11 Tucker (D. C.), 347; *Commonwealth* v. *Savage*, 29 N. E. R. 468.

In the case of *Geer* v. *Connecticut*, 161 U. S. 519, JUSTICE WHITE, speaking for the Court, reviews at length the origin and history of the State's ownership of animals *feræ naturæ*, and fully upholds the doctrine announced in the cases which we have cited and distinctly recognizes the authority of the State to affix conditions to the killing and sale of game predicated, as he says this power is, on the peculiar nature of such property and its common ownership by all the citizens of the State.

The right of the State to regulate and control the killing, possession and sale of game within its borders is also held to rest upon its police power, and, if the provisions of the laws by which such regulation is made are reasonable for the accomplishment of the end sought to be obtained, the law will be held to be a valid exercise of that power. In *Lawton* v. *Steele*, 152 U. S. 138, the Court says : " The preservation of game and fish has always been treated as within the proper domain of the police power, and laws. limiting the seasons within which birds or wild animals may be killed or exposed for sale, and prescribing the time and manner in which fish may be caught, have been repeatedly upheld by this Court." In *Geer* v. *Connecticut, supra*, the Court say : " Aside from the authority of the State derived from the common ownership of game and the trust for the benefit of its people which the State exercises in relation thereto, there is another view of the power of the State in regard to the property in game which is equally

conclusive. The right to preserve game flows from the undoubted existence in the State of a police power to that end, which may be none the less efficiently called into play because by doing so interstate commerce may be remotely and indirectly affected." In support of the proposition so announced the Supreme Court cite *Kidd* v. *Pearson*, 128 U. S. 1; *Hall* v. *De Cuir*, 95 U. S. 485 ; *Sherlock* v. *Alling*, 93 U. S. 103.

That the total prohibition of having game, from whatever source derived, in possession during the closed season is a reasonable, if not necessary; means of protecting the domestic game of the State making the prohibition, has been held in a number of the cases already cited, and also in *American Express Co.* v. *People*, 133. Ill. 649 ; *Roth* v. *State*, 51 Ohio St. 209 ; *State* v. *Randolph*, 1 Mo. App. 15. The Act of 1898, chapter 206, does not prohibit the importation of foreign game into any other portion of this State than the counties in which the law is operative, and even in those counties the prohibition is for but a portion of the year. We are, therefore, well within the authorities in holding that the passage of the Act constituted a valid exercise by the State of power which it clearly possessed, and that its provisions are reasonable for the accomplishment of its purpose, and that its operation upon interstate commerce is of that remote and incidental character which the Supreme Court, in *Geer* v. *Connecticut*, has said does not interfere with the right of a State to protect its game.

It cannot be successfully contended that the law now under consideration is unconstitutional, because it operates unequally upon the inhabitants of the several parts of the State, and that it discriminates against the residents of Baltimore City, by reason of the fact that a number of counties are excepted from its operation. It has long been the policy of the State of Maryland to enact local laws affecting only certain counties, or to exempt particular counties or localities from the operation of general laws or of some of the provisions thereof.

Nor is the law at variance with the provisions of Article 3, sec. 29, of the State Constitution, because it embraces more than one subject and has a misleading title. The law in its title is described as " An Act to repeal and re-enact sections 13, 14 and 15 of Article 99 of the Code of Public General Laws, title Wild Fowl, Birds and Game, and to add certain new sections for the better protection and preservation of birds and game animals." The several sections of the Act relate to and are germane to one subject-matter, the protection and preservation of birds and game animals, which is described in its title, and this is all that the Constitution requires. " While the title must indicate the subject of the Act, it need not give an abstract of its contents nor mention the means and method by which the general purpose is to be accomplished." *M. & C. C. of Baltimore* v. *Reitz*, 50 Md. 579.

We think the indictment was not defective. The offence was one created by statute, and the indictment described it in the words used in the statute. This has repeatedly been held by this Court to be sufficient. *Mincher* v. *State*, 66 Md. 227 ; *Cearfoss* v. *State*, 42 Md. 403 ; *Dickhaut* v. *State*, 85 Md. 464.

The judgment appealed from will be affirmed with costs.

*Judgment affirmed.*

(Decided June 22nd, 1899).