Building Height Cases.

State ex rel. Klefisch and another, Appellants, vs. Wisconsin Telephone Company, Respondent.
State ex rel. Buchholz and another, Appellants, vs. Hotel Wisconsin Realty Company, Respondent.
Atkinson, Respondent, vs. Piper and others, Appellants.

*September 22—October 16, 1923.*

*Municipal corporations: Constitutional law: Zoning ordinances: Police power: Regulation of height of buildings by legislature: Statute applicable to cities only: Reasonable classification: Exemptions: Motives prompting legislature to enact law: Review by courts: Statutes: Approval of governor: How evidenced: Gas tank as "building:" Building under construction when act takes effect: Retroactive statutes.*

*Questions involved in all three cases.*
1. In view of the general sentiment developing throughout the country favorable to the so-called zoning ordinances, the many states that have statutes authorizing cities to enact them, the respectable authority which has upheld such laws and ordinances, and the reasoning which supports the conclusion that they are a valid exercise of the police power, this court is little inclined to question the constitutionality of a law regulating the height of buildings to be erected in cities.
2. The legislature has power to limit the height of buildings in populous centers to promote the public health and safety and, perhaps, the convenience and general welfare of the people.
3. The police power of the state cannot be exercised arbitrarily or fancifully, but only to meet public needs and to remedy existing evils; and in order to place limitations upon the use to which an owner may devote his property, the limitations must be essential to the promotion of the public interest.
4. It is the duty of the court to so construe a statute as to save its constitutionality. if possible to do so.
5. Ch. 424, Laws 1923 (sec. 4444f, Stats. 1923), limiting the height of buildings, was not intended to apply to villages and farming communities, but is limited in its scope to cities only; sub. 1, sec. 2, limiting the height to 125 feet, being applicable to cities of the first class, and sub. 2, limiting the height to 100 feet, being applicable to all other cities.

6. A legislative classification should not be condemned unless it is beyond all reason, and in view of established conditions in the only city of the first class in the state, said ch. 424 could not be held unreasonable.

7. Nor is said ch. 424 invalid as a denial of the equal protection of the laws because exempting grain and coal elevators, sugar refineries, and cement works from its operation.

8. Although there is reason to suspect a desire on the part of the legislature to limit the height of buildings around the capitol square in the city of Madison prompted the enactment of this law, the motives which prompted the legislature to exercise its power are not subject to judicial review, approval, or condemnation.

9. The governor's signature to an act of the legislature is conclusive evidence of his approval thereof, and the court cannot consider his memorandum attached thereto criticising the act.

*Madison Gas & Electric Company Case: Brief of amicus curiæ.*

10. A gas tank is not a "building" within the meaning of ch. 424, Laws 1923.

*Wisconsin Telephone Company Case.*

11. A construction giving a retrospective effect to a statute will not be made unless clearly required by the language of the statute, especially where vested rights are affected.

12. Where an owner erected the first eight stories of a sixteen-story building several years before the passage of ch. 424, Laws 1923, but had postponed construction of the remaining portions until the extension of its business should require further construction, had made large expenditures for engineers' and architects' fees, and had entered into contracts for further construction before the act was passed, the act did not apply to such building.

*Hotel Wisconsin Realty Company Case.*

13. Where, during the construction of a hotel designed to be 100 feet in height, the owner decided to add another story, but did nothing to accomplish such purpose before the passage of ch. 424, the law was applicable to such building.

*Piper Brothers Case.*

14. Where a permit was obtained to construct a hotel 115 feet in height and the plans had been prepared and financing arranged for, and the work of tearing down an old structure had been commenced before the passage of ch. 424, the statute was not applicable, though no expenses had been incurred which would be lost if the building could not exceed 100 feet in height. OWEN, ROSENBERRY, and CROWNHART, JJ., dissent. ESCHWEILER, J., dissents in part.

APPEAL from an order of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

APPEAL from an order of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Reversed.*

APPEAL from an order of the superior court of Dane county: O. A. STOLEN, Judge. *Reversed.*

In *State ex rel. Klefisch v. Wisconsin Telephone Company* there were briefs for the appellants by *Herman L. Ekern,* attorney general, *Robert M. Rieser,* deputy attorney general, *George A. Shaughnessy,* district attorney of Milwaukee county, *Daniel W. Sullivan,* first assistant district attorney, and *Fred C. Siebold* of Milwaukee; and the cause was argued orally by *Mr. Ekern* and *Mr. Rieser.*

For the respondent *Wisconsin Telephone Company* there was a brief by *Miller, Mack & Fairchild* of Milwaukee, and the cause was argued orally by *Arthur W. Fairchild.*

In *State ex rel. Buchholz v. Hotel Wisconsin Realty Company* the following attorneys appeared for the appellants: *Herman L. Ekern,* attorney general, *Robert M. Rieser,* deputy attorney general, and *Raymond E. Evrard* of Green Bay, district attorney of Brown county.

For the respondent *Hotel Wisconsin Realty Company* there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *Lawrence A. Olwell.*

In *Atkinson v. Piper Brothers* there was a brief for the appellants by *Hall, Baker & Hall* of Madison, and oral argument by *John F. Baker* and *F. W. Hall.*

For the respondent *Atkinson* the following attorneys appeared: *Herman L. Ekern,* attorney general, *Robert M. Rieser,* deputy attorney general, *Theo. G. Lewis,* district attorney of Dane county, and *Philip G. Sanborn,* assistant district attorney.

*H. L. Butler* of Madison, as *amicus curiæ,* on behalf of the Madison Gas & Electric Company.

OWEN, J.    These actions are brought to test the validity of ch. 424 of the Laws of 1923, being sec. 4444*f* of the Statutes.    The law in question is set out in full in the margin.[1]    It is claimed that the law is not a valid exercise of the police power and that it takes private property without just compensation, contrary to the provisions of the state and federal constitutions.

"The police power is one of the most essential powers of government, one that is the least limitable.    It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining.    To so hold would preclude de-

---

[1] Section 1.    Section 4444*g* of the statutes is hereby repealed.

Section 2.    A new section is added to the statutes to read: Section 4444*f*.    1.    In cities of the first class no building shall be erected to a height of more than one hundred twenty-five feet above the grade of the street upon or nearest which the building fronts.

2.    Except in cities of the first class, no building shall be erected to a height of more than one hundred feet above the grade of the street upon or nearest which the building fronts.

3.    The restrictions contained in this section shall not apply to grain or coal elevators, sugar refineries nor cement works.    The provisions of this section shall not apply to steeples, domes, towers, belfries, statuary or other ornamentation, covered with fireproof materials and intended and used for strictly ornamental purposes. This section shall not apply to flagstaffs, chimneys, pipes, cupolas or roof houses not exceeding fifteen feet in length or width nor twelve feet in height, providing such cupolas or roof houses be covered with fireproof materials.

4.    Any person, firm or corporation violating the provisions of this section shall forfeit to the state not more than one hundred nor less than twenty-five dollars for each day such violation continues.    It shall be the duty of the district attorney of the county in which such violation occurs, with the aid of the attorney general, to enforce the collection of such forfeiture.

5.    The erection, use or maintenance of any building in violation of the provisions of this section may be restrained at the instance of any citizen or taxpayer of this state, and upon his request it shall be the duty of the district attorney of any county wherein such violation occurs or is threatened, to institute and prosecute any necessary action to restrain such erection, use or maintenance.

Section 3.    This act shall take effect upon passage and publication.

velopment and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community." *Hadacheck v. Sebastian,* 239 U. S. 394, 36 Sup. Ct. 143.

"In a general way the police power extends to all the great public needs. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank v. Haskell,* 219 U. S. 104, 111, 31 Sup. Ct. 186.

"The police power of a state embraces regulations designed to promote the public convenience or the general prosperity as well as those to promote public health, morals, or safety; it is not confined to the suppression of what is offensive, disorderly, or unsanitary, but extends to what is for the greatest welfare of the state." *Bacon v. Walker,* 204 U. S. 311, 27 Sup. Ct. 289; *Chicago, B. & Q. R. Co. v. People,* 200 U. S. 561, 26 Sup. Ct. 341.

This power has been exercised to authorize the destruction of buildings without compensation to prevent the spread of conflagration. *American Print Works v. Lawrence,* 23 N. J. Law, 9. To prohibit the further use of buildings and appliances for brewing purposes, although they have been erected and fitted for that purpose, and brewing was a lawful business. *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273. To prohibit the erection of fences on one's own land to gratify spite against others. *Karasek v. Peier,* 22 Wash. 419, 61 Pac. 33, 50 L. R. A. 345; *Smith v. Morse,* 148 Mass. 407, 9 N. E. 393. To prohibit the wasteful burning of natural gas by the owner. *Townsend v. State,* 147 Ind. 624, 47 N. E. 19. To prohibit the use of artificial means by the owners of gas wells to increase the natural flow of the gas from them. *Manufacturers' G. & O. Co. v. Indiana N. G. & O. Co.* 155 Ind. 461, 57 N. E. 912. To authorize dams for the purpose of reclaiming swamp lands where the effect was to oblige landowners to construct and maintain dikes to protect their lands from the water raised. *Manigault v. Springs,* 199 U. S. 473, 26 Sup. Ct. 127. To

prohibit one from allowing weeds to grow on his own land. *St. Louis v. Galt,* 179 Mo. 8, 77 S. W. 876. To limit the quantity of land any person or family may cultivate within city limits. *Summerville v. Pressley,* 33 S. C. 56, 11 S. E. 545. To prohibit the flow of water from a private artesian well except for certain specified beneficial purposes, as irrigation or domestic use. *Ex parte Elam,* 6 Cal. App. 233. To restrict owners of private oyster beds in taking oysters from them. *Windsor v. State,* 103 Md. 611, 64 Atl. 288. To prohibit the growing of rice within city limits. *Green v. Savannah,* 6 Ga. 1.

Under this power businesses of various kinds within municipalities have been regulated, restricted, or prohibited, such as the manufacture of bricks, the maintenance of a livery stable, a public laundry, a garage, stone crusher, machine shop, carpet-beating establishment, slaughter of animals, the erection of bill-boards exceeding a certain height, prohibiting the discharge of smoke, and the storing of oil. The installation of sinks and water-closets in tenement houses has been regulated and the registration of plumbers has been required. *Lincoln Trust Co. v. Williams B. Corp.* 229 N. Y. 313, 128 N. E. 209, and cases there cited.

The imperial nature of this power is strikingly illustrated in *Hadacheck v. Sebastian,* 239 U. S. 394, 36 Sup. Ct. 143, where a brick-yard consisting of a bed of clay for the manufacture of brick of a fine quality, having a value of $800,000, was abated pursuant to an ordinance of the city of Los Angeles, although at the time of its purchase by the owner it was outside of the limits of the city and distant from dwellings and other habitations, and at a time when no one expected or believed that the territory would be annexed to the city.

Legislation limiting the height of buildings pursuant to this power has been expressly upheld by the supreme court of the United States. *Welch v. Swasey,* 214 U. S. 91, 29 Sup. Ct. 567, affirming the decision of the supreme court of Massachusetts. Similar legislation has also been upheld by

the supreme court of Maryland. *Cochran v. Preston,* 108 Md. 220, 70 Atl. 113.

Recently so-called zoning laws, authorizing municipalities to enact ordinances prescribing zoning districts and limiting the height and character of buildings therein, have become quite common. Such laws and ordinances enacted pursuant thereto have been sustained in *Des Moines v. Manhattan Oil Co.* 193 Iowa, 1096, 184 N. W. 823; *In re Opinion of the Justices,* 234 Mass. 596, 127 N. E. 525; *Lincoln Trust Co. v. Williams B. Corp.* 229 N. Y. 313, 128 N. E. 209; *Ware v. Wichita,* 113 Kan. 153, 214 Pac. 99, although contrary conclusions were reached in *Spann v. Dallas,* 111 Tex. 350, 235 S. W. 513, and in *State ex rel. Lachtman v. Houghton,* 134 Minn. 226, 158 N. W. 1017. We have a similar law (sec. 62.23, Stats.), and numerous cities throughout the state have enacted so-called zoning ordinances by the terms of which limitations are placed upon the height of buildings which may be erected in such cities. That this is a more scientific and satisfactory way of limiting the height and character of buildings is quite apparent. It enables the individual city to prescribe regulations which conform to local requirements and conditions and are supported by local public sentiment. In view of the general sentiment developing throughout the country favorable to such regulations, as indicated by the many states which have passed statutes authorizing cities to enact such ordinances, and the many cities which have acted under such laws, the respectable authority which has upheld such laws and ordinances as a valid exercise of the police power, and the reasoning by which we think such conclusions are supported, we are little inclined to question the constitutionality of the law under consideration.

That high buildings in densely populated areas are injurious to health and increase fire hazards, resulting in a menace to the safety of property and persons, is scarcely open to question. That the police power may be exerted to

promote the public health and public safety is so well established that it is a truism in the law. Granting that the more scientific and satisfactory way of accomplishing this result, so far as high buildings in populous centers constituting a menace to public health and safety are concerned, is by means of the so-called zoning ordinances, it cannot be said that the legislature may not accomplish directly that which it may do indirectly. If it has the power to authorize cities to enact regulations limiting the height of buildings, it cannot be satisfactorily maintained that it is without power to accomplish the same result by a direct act of the legislature. While the direct act of the legislature may not embody the best public policy, that is something with which we are not concerned. The question is, Has the legislature the power to limit the height of buildings in populous centers? Upon this question we are in accord with those courts upholding the power. We therefore hold that the legislature has power to limit the height of buildings in populous centers of the state in promotion of the public health and safety and, perhaps, the convenience and general welfare of the people.

But it is claimed that this law is not limited to cities or populous centers—that it prohibits the erection of buildings exceeding 100 feet in height in villages and farming communities. If such be the construction of the law, it would be far more difficult to uphold it as a reasonable exercise of the police power. This is true because a congestion of population must co-exist to constitute a building a menace to public health and, we think, also, to public safety; at least we have heard of no popular demand for limiting the heights of buildings in rural districts. The police power can only be put forth to meet public needs and requirements and to remedy existing evils. It cannot be exercised arbitrarily or fancifully. In order to place limitations upon the use to which an owner may devote his property, such limitations must be essential to the promotion of public interests. Besides, while there may occasionally be structures in rural

districts 100 feet in height, it should be remembered that this law applies only to buildings, and to come under the ban of the law a structure must take the form of a building. The fact that no evil resulting from high buildings in the country and villages can be said to exist is quite persuasive that the legislature did not intend the law to include such portions of the state. We should presume that the law is aimed at a real existing evil, and that the territory intended to be comprehended within the law is limited to those areas where high buildings constitute an evil. But aside from this we are persuaded that a close examination of the law reveals a legislative intent to limit its scope to cities only. At any rate it is our duty to so construe it if possible and thus save its constitutionality.

The first subsection of the law deals with cities of the first class. In such cities buildings of a height of more than 125 feet are prohibited. In drawing *that* subsection the legislature certainly had cities in mind. The next subsection provides: "Except in cities of the first class, no building shall be erected to more than 100 feet above the grade of the street upon or nearest which the building fronts." It is very common for the legislature in enacting legislation applicable to cities to enact one regulation for cities of the first class and a different regulation for other cities. By sub. 1 we think it was intended to provide for cities of the first class; by sub. 2 for all other cities. If the legislature intended to extend this legislation to the country districts, the phrase "more than 100 feet above the grade of the street upon or nearest which the building fronts" is most inapt. The word "street" is not commonly used to designate a country highway, and, in fact, buildings in the country, as a rule, seldom front on a highway. Very frequently they are erected on a hill or knoll much higher than the highway, and it is quite conceivable that if the law were intended to limit buildings to a height of 100 feet above the grade of the nearest highway, many fine building spots could not be utilized at all. This

certainly was not the intention of the legislature. We hold that the law should be construed as applying to cities only.

Certain classifications of the law are also assailed. It is said that there is no reason for permitting buildings of 125 feet in cities of the first class and limiting them to 100 feet in other cities because they constitute a greater menace in the more populous than they do in the less populous communities. This is perhaps true; but the legislature was confronted with the fact that in the only city of the first class in the state numerous buildings far exceeding that height already existed and that a height of 125 feet would constitute a lesser shock to existing conditions. Legislative classification should not be condemned unless it is beyond all reason, and in the classification here under consideration we cannot say that the legislature could not reasonably take into consideration established conditions and temper their regulation somewhat with reference thereto.

Then, again, it is claimed that the exemption of grain and coal elevators, sugar refineries, and cement works from the operation of the law constitutes an arbitrary classification. It is not our task to justify these exemptions. We cannot condemn them unless they are beyond all reason, and this we do not feel warranted in saying. It may well be that these exemptions were in the legislative mind entitled to special consideration owing to the requirements of these particular industries with reference to the height of buildings, their usual location with reference to the populous portion of the city, the number of people employed therein, the material of which they are constructed, and the usual fire hazard to which they are subjected. At any rate, a similar exemption did not invalidate the statute of the state of Massachusetts, under consideration in *Welch v. Swasey,* 214 U. S. 91, 29 Sup. Ct. 567, although that very classification appears to have been urged to the court for the purpose of invalidating the law. See page 100 of the report of the case.

In response to the suggestion of H. L. Butler, Esq.,

who appeared as *amicus curiæ* and who filed a brief on behalf of the Madison Gas & Electric Company, emphasizing the fact that the gas company owns property adjacent to property upon which a coal elevator is constructed, and that because the coal elevator may be built to a height exceeding 100 feet and a gas tank proposed to be constructed by the gas company cannot exceed 100 feet the gas company is denied the equal protection of the laws, we respond that, in our opinion, the proposed gas tank is not affected by the law, as it cannot be termed a building within the meaning of the act. This is frankly conceded in the attorney general's brief. We do not think that the law in question can be said to deprive property owners of the equal protection of the law.

It is further contended that the law is invalid because the legislature enacted it to accomplish what it failed to accomplish by sec. 4444*g,* Stats. 1921, which was held unconstitutional in *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159. There is ample reason to suspect that a desire on the part of the legislature to limit the height of buildings around the Capitol Square in the city of Madison prompted the enactment of this law. But the motives which prompted the legislature to exercise its power in this respect are not subject to judicial review, approval, or condemnation. *State ex rel. Rose v. Superior Court,* 105 Wis. 651 (81 N. W. 1046), and cases cited at pages 676 and 677; *Tilly v. Mitchell & Lewis Co.* 121 Wis. 1, 98 N. W. 969.

It is further argued that the law is invalid because it was not approved by the governor. It is conceded that he signed the act, but, in a memorandum attached to the act, he indulged in some criticism thereof. It is argued that the memorandum indicates that the act did not meet with his approval, and that, unless approved by him, it did not become a law. We hold his signature to the act is conclusive evidence of his approval thereof, and that a court can take no notice of the memorandum attached to the act. It is ap-

parent from the memorandum that the law did not fully respond to his views upon the question, but that he preferred such legislation to none. However, it is not necessary nor is it proper to consider the contents of the memorandum. His signature attached to the act conclusively indicates his constitutional approval of the legislation.

Up to this point the questions considered have involved the validity of the law injuriously affecting the respective defendants in the three several actions above entitled. Perhaps it should have been stated at the beginning of this opinion that because the dominant question involved in each action was the constitutionality of the statute we have considered, the actions were argued together, and it was thought proper to dispose of them in a single opinion. The question now arises whether the law applies to each of the three defendants. As the situation of each is somewhat peculiar, it becomes necessary to deal separately with the facts presented in each case.

In the *Wisconsin Telephone Company Case* the facts as disclosed by the answer, to which a demurrer was overruled, may be summarized as follows: Prior to 1917 the *Wisconsin Telephone Company* acquired certain lands in the city of Milwaukee for the purpose of housing its Broadway street central office and such additional central units as may from time to time become necessary in its proper conduct of its telephone business, and for the further purpose of providing office space for its principal office and for the various departments of its business and with a view to the erection thereon of a modern telephone and office building. For such purpose it caused to be designed a building 225 feet in height, to consist of sixteen stories and a basement, with a foundation building plan and architectural design suitable for a building of that height. It proceeded to the erection of eight stories of said building, placing a temporary roof above the ninth floor and postponing the completion of the

building until the extension of its business required it. Prior to the passage of the law in question the telephone company decided to complete said building to a height of thirteen stories, or 185 feet, and expended $30,000 in engineering and architect's fees before the law took effect, and had incurred further liabilities in that respect to the extent of $20,000.

On April 12, 1923, the company had contracted for the structural steel at an approximate cost of $12,000. On April 2 and 13, 1923, it contracted for brick for the further construction of said building to the amount of $33,334. These brick were of special sizes to conform to the architectural requirements of the building. On June 29, 1923, it had entered into a contract for additional elevators at an expense of $49,500. It had acquired a building permit from the city of Milwaukee and had actually entered upon the further construction of the building, all prior to the passage of the law. It is further alleged that the cost of the completed portion of the building was $75,000 in excess of the amount required for an eight-story building in order to make it suitable to carry the additional stories contemplated. The question is whether the law applies to this building.

The provision of the law is that "no building shall be erected," etc. Plainly it does not contemplate the razing of buildings heretofore erected in cases above the specified heights. Just as plainly it prohibits the erection of any buildings hereafter exceeding the specified heights. It is silent concerning buildings in the process of erection at the time the law took effect. A construction of a statute which gives it a retrospective effect is not favored, and this is especially true where vested rights are affected. In 25 Ruling Case Law, 787, it is said:

"Every law that takes away or impairs rights that have vested under existing laws is generally unjust and may be oppressive. Hence such laws have always been looked on with disfavor."

Without negativing the power of the legislature to make the law applicable to buildings then in the course of construction, we are clear that it should not be so construed where substantial rights had vested prior to the enactment of the law which would be unreasonably injured by such a construction unless such a purpose is clearly made to appear by the language of the act itself. It is apparent that the telephone company had conceived the purpose of erecting a sixteen-story building several years before the passage of the act and pursuant to such purpose did actually erect the first eight stories, postponing the construction of the remaining portion of the building until its necessities should require the further construction. It further appears that long before the passage of the act the telephone company in good faith not only resolved but actually arranged for the completion of its original plans and to that end had incurred great expense. To construe this law as applying to the telephone company's building would work great hardship, a serious invasion of vested rights, and would give to the statute a retrospective effect which should not be given in the absence of a plain legislative purpose. We are unanimously of the opinion that the act does not apply to the building of the defendant telephone company, and that the demurrer to the answer was properly overruled.

In the *Hotel Wisconsin Realty Company Case* the facts disclosed by the answer, to which a demurrer was overruled, may be summarized as follows: Prior to the enactment of said ch. 424 this defendant entered upon the construction of a hotel in the city of Green Bay, designed to be 100 feet in height. Prior to the enactment of said chapter the construction of said building had progressed to the fourth floor. The defendant then decided to add a ninth story to the building, but made no application for a building permit until after the passage and publication of said act, at which time such permit was denied. The ninth story which the de-

fendant now proposes to erect will cost not less than
$56,000, will contain thirty rooms, and it will bring the
height of said building proper to a total of 110 feet.   It is
alleged that the rooms in the higher stories of a hotel build-
ing such as those of this proposed ninth story are of greater
value to the defendant than rooms on the lower floors be-
cause they are more sought after by the public.   Although
it is alleged in the answer that this defendant decided to add
a ninth story to the building before the passage of the law,
nothing whatever had been done to accomplish the purpose.
Defendant had incurred no additional expense or liability
and had not even obtained a permit.   We can see nothing
here in the nature of vested rights which are affected by the
law distinct from the effect which the law has upon the
rights of all other property owners.   We are unanimously of
the opinion that the law is applicable to the defendant *Hotel
Wisconsin Realty Company,* and that the demurrer to the
answer should have been sustained.

In the *Piper Brothers Case* the complaint, in the action
which was brought to restrain them from erecting a hotel
building 115 feet in height on property owned by them in
the city of Madison, a demurrer to which was overruled,
shows that prior to the passage of said ch. 424, to wit, on
the 12th day of June, 1923, the city of Madison granted
a permit to said defendants to erect a hotel building to a
height of 115 feet; that pursuant to and in reliance upon
said permit said defendants proceeded with their building
project, which included the erection of a building across the
street from said property; that they engaged architects who
prepared plans for a fire-proof building of modern con-
struction, suitable for a hotel building, to the height of 115
feet, at considerable cost and expense to the said defendants,
all prior to the enactment of said ch. 424; that said de-
fendants arranged for the financing of the said building
project upon the basis of a hotel building to the height of

115 feet, as aforesaid, all prior to the enactment of said ch. 424; that prior to the enactment of said ch. 424 work was actually begun by these defendants in tearing down the structure now on the proposed hotel site, as aforesaid; that if the defendants are not permitted to erect the hotel building to a height in excess of 100 feet the project will be less profitable and the value of the land will be lessened in the sum of $35,000, with a resultant loss of approximately $25,000 per year on the operation of said hotel project.

. These facts place this case on middle ground as compared with the other two cases. While these defendants secured a permit and commenced building operations prior to the enactment of the law, there is no allegation that they had incurred any expense which will be lost to them if the building cannot be erected to a height of more than 100 feet. True, it is alleged that they had actually commenced work on the project and had arranged for its financing. Whether these facts constitute vested rights entitled to judicial protection is much more debatable than the situation presented in the other cases already disposed of, and the question must rest for the most part a matter of individual opinion.

In our consideration of these cases down to this point Mr. Justice JONES took no part. Upon the question as to whether the law should be held applicable in the *Piper Brothers Case* the court was equally divided. Mr. Justice JONES, having no interest in the case after the question of the constitutionality of the law was decided, felt that he could properly participate in the decision of this question. As a result of his participation the court holds that the law should not be held applicable in this case, and that the demurrer to the complaint should have been sustained. Upon this question Mr. Justice ROSENBERRY, Mr. Justice CROWN-HART, and the writer are of a contrary view and think that the law should be held applicable.

It follows that the order appealed from in the case of

*State ex rel. Anthony V. Klefisch v. Wisconsin Telephone Company* should be affirmed; that the order appealed from in the case of *State ex rel. F. R. Buchholz v. Hotel Wisconsin Realty Company* should be reversed, and cause remanded with directions to sustain the demurrer to the answer; and that the order appealed from in the case of *State ex rel. L. D. Atkinson v. Piper Brothers* should be reversed, and the cause remanded with instructions to sustain the demurrer.

*By the Court.*—So ordered.

ESCHWEILER, J. (*dissenting in part*). I agree with the result reached in each of the three cases so far as the particular buildings are concerned in view of the majority holding that the law challenged is constitutional. I cannot agree, however, with the views expressed by the majority upon which the constitutionality of this act is supported.

The majority opinion construes this law to be limited to restrictions on buildings hereafter to be erected within the corporate boundaries of cities, for if it were held to be state-wide in its application the court would undoubtedly have to hold it unconstitutional as an unreasonable and improper classification under the doctrine laid down by this court in the case of *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885, the Tenement House Law.

So far as the claimed purposes of the law are concerned, namely, the exercise of the police power of the legislature for the health, safety, or welfare of the general public, it is, as now construed, a purely arbitrary classification, for it is held to apply only to assemblages of peoples and dwellings which so happen to be within the corporate boundaries of one particular class of municipal corporations, namely, cities; while excluding from its operation the same, or in many instances larger, numbers of peoples and dwellings that may be found within incorporated villages. That a classification between larger and smaller communities is

proper and may be made under the police power the basis for discrimination as to inclusion or exclusion is unquestioned.    That was expressly so decided in upholding the law requiring different conditions in the carrying on of pharmacies in communities of over 500 inhabitants from those in smaller communities in *State v. Evans,* 130 Wis. 381, 110 N. W. 241.

But the classification now established cannot be placed upon the theory of including the large and excluding the small communities of the state or upon any theory as to the density of population.   The foregoing is demonstrated by a compilation from the Wisconsin Blue Book of 1923, based upon reports as to the population in the respective communities in 1920.  · (Some of the incorporated villages are excluded in this tabulation because they are reported without giving their populations.)    The table is as follows:

|  |  | Number of fourth-class cities. | Number of incorporated villages. |
|---|---|---|---|
| With population of less than | 500 | ... 1 | 151 |
| With population of between | 500 and 1,000 | ... 9 | 120 |
| With population of between | 1,000 and 1,500 | ... 12 | 29 |
| With population of between | 1,500 and 2,000 | ... 24 | 4 |
| With population of over | 2,000 | ... 69 | 4 |
| Total | ........................ | 115 | 308 |

By this law the one city of the first class, Milwaukee, is placed separately, presumably because of its large population.    Included with the cities of the fourth class shown above are also included by this law three cities of the second class containing a population of over 40,000 and less than 150,000, and seventeen of the third class containing a population of between 10,000 and 40,000 inhabitants.

If this law is founded upon the idea of the protection of the people of the state from harm to life or health, then it would surely seem that a fair and reasonable exercise of this great police power of the state should furnish to any

one community of 2,000 people the same protection against the evils at which the law is aimed as is furnished any other community of an equal number of inhabitants. The law as here construed, however, gives this protection to one community because it is a city and excludes it as to the other because it is not a city. Yet Main street in the one is precisely similar with Main street in the other, and which is within a city and within the law and which within a village and without the law cannot be told by the naked eye.

If the legislature had intended to make this much narrower classification than an ordinary reading of the statute would indicate and is done by the majority opinion, it would have been extremely easy for the legislature to have done so. That they so omitted to do is plain from an inspection of the law itself. That they did not want to so limit it is almost demonstrated by an incident in the history of the passage of this act through the legislature. At one time a substitute amendment was presented and defeated identical with the law as it now stands except that the penalty clause was not therein inserted, and that, in what is now sec. 2, the significant words "In all cities" were inserted to precede the phrase in the paragraph as it now stands, reading, "except in cities of the first class." The reason for the defeat of such substitute amendment which would have made the legislative act read precisely as the court now reads it does not appear. But the fact remains that the words "In all cities" were read out by the legislature and are now read in again by the court.

I think also that the giving to grain and coal elevators, sugar refineries, and cement works the right to build to heights necessarily deemed dangerous and excessive, while prohibiting all other industries or enterprises from doing the same thing, is a purely arbitrary classification and clearly within what was condemned by this court in the peddlers' license law passed upon in *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468.

Under the present general charter law of this state, a law which it took a number of years to construct and under which apparently all of our cities but Milwaukee and Madison are now operating, permission is given to create by ordinance "a city plan commission" with power to suggest plans for the general improvement of the city.  Sub. (1), (2), sec. 62.23, Stats.  The councils of such cities may regulate by ordinance industrial districts and the regulating or prohibiting any particular industry or use of building therein, sub. (5), sec. 62.23; may regulate the *size of buildings hereafter erected,* sub. (6) ; and may establish fire limits, sub. (7) ; and provide for a board of appeals to review orders made under such provisions, sub. (8).

The law here upheld may hereafter seriously curtail the powers given for regulating building by the general charter law, *supra.  Baraboo v. Dwyer,* 166 Wis. 372, 165 N. W. 297.