## CHRISTY ET AL. *v.* CLARK ET AL., COMMISSIONERS
[No. 122, October Term, 1949.]

*Decided April 14, 1950.*

The cause was argued before MARBURY, C. J., and COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Lionel Bennett* for appellants.

*J. Edgar Harvey, Deputy Attorney General,* with whom were *Hall Hammond, Attorney General,* and *John B. Russell, Special Assistant Attorney General,* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree sustaining a demurrer to a bill of complaint and dismissing the bill, which sought an injunction to restrain the appellees from enforcing the provisions of Article 72, Section 4 (c) of the Code (1947 Supp.).

Section 4, subsection (b), known as the "cull law", makes it unlawful "for any person to have oysters in his possession which contain more than five percent. (5%) of shells and oysters less than three inches from hinge to mouth \* \* \*." Subsection (c) provides that "all of the provisions of this Article relating to the inspection and culling of oysters and the imposition of penalties for the violation of the cull law shall apply to oysters in the shell found anywhere within the State, whether afloat or ashore, and whether said oysters have been caught within the waters of this State or shipped or brought into Maryland from other states."

The bill alleges that appellants are licensed oyster packers in Crisfield; that due to depletion of the Maryland supply, in order to operate they have been forced to purchase oysters from private planters in other states; that many of these oysters measure less than three inches from hinge to mouth, although, due to the selective method of their production and cultivation, their meats are of such quality and size as to meet the classifications under the Food and Drug Administration of "selects" and "standards"; that these oysters are not game or *ferae naturae,* nor are they natural resources of the State of Maryland, but are articles of commerce of a high nutritional value. Section 4(c) is attacked as unconstitutional and an illegal interference with interstate commerce. It is alleged that enforcement of the law will cause irreparable damage to appellants.

The appellants concede that the State has a right to regulate and control the killing, possession and sale of game within its borders. *Dickhaut v. State*, 85 Md. 451, 37 A. 21, 36 L. R. A. 765, 60 Am. St. Rep. 332. In that case it was held that the Act did not cover game taken outside the State. But in *Stevens v. State*, 89 Md. 669, 43 A. 929, the court sustained a conviction under a statute that made it unlawful to possess or offer for sale in the closed season game birds or animals, whether caught in this or another state. In *Tyler v. State*, 93 Md. 309, 313, 48 A. 840, 842, 52 L. R. A. 100, while the court held that the cull law of 1900 was not intended to apply to oysters taken outside the State, it was clearly stated: "It would certainly have been an appropriate and efficient aid to the effectual enforcement of the culling of the oysters taken in this state to have prohibited having in possession unculled oysters of any kind or taken from any source and under the rulings of this court in the *Stevens' case* it would have been within the power of the state to have done so." It has been universally recognized that such regulation by the State is not prohibited by the Commerce clause. Art. 1, § 8, cl. 3. *Geer v. Connecticut*, 161 U. S. 519, 16 S. Ct. 600, 40 L. Ed. 793; *New York ex rel. Silz v. Hesterberg*, 211 U. S. 31, 29 S. Ct. 10, 53 L. Ed. 75; *Johnson v. Gentry*, 220 Cal. 231, 30 P. 2d 400, 92 A. L. R. 1264; *Van Camp Sea Food Co. v. Department*, D. C., 30 F. 2d 111. In *Bayside Fish Flour Co. v. Gentry*, 297 U. S. 422, 426, 56 S. Ct. 513, 515, 80 L. Ed. 772, it was said: "The act regulates only the manufacture within the state. Its direct operation, intended and actual, is wholly local. Whether the product is consumed within the borders of the state or shipped outside in interstate or foreign commerce are matters with which the act is not concerned. The plain purpose of the measure simply is to conserve for food the fish found within the waters of the state. Over these fish, and over wild game generally, the state has supreme control. Sardines taken from waters within the jurisdiction of the state and those taken from without are, of course,

indistinguishable; and to the extent that the act deals with the use or treatment of fish brought into the state from the outside, its legal justification rests upon the ground that it operates as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy". It was expressly held in that case that the fact that the regulation applied to sardines purchased outside the state was not a fatal objection. We find nothing inconsistent with this statement of the law in *Foster Fountain Packing Co. v. Haydel*, 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147; *Johnson v. Haydel*, 278 U. S. 16, 49 S. Ct. 6, 73 L. Ed. 155, or *Toomer v. Witsell*, 334 U. S. 385, 68 S. Ct. 1156, 92 L. Ed. 1460. The regulation in those cases involved unwarranted discrimination against non-residents. They are clearly distinguishable.

We find no merit in the appellants' contentions that the cull law cannot be applied to oysters taken from private beds, *Windsor v. State*, 103 Md. 611, 64 A. 288, 12 L. R. A.. N. S., 869, or that a question involving the police power should not be decided on demurrer. There is no showing that the appellees could have amended their bill to make a stronger case, or that they sought leave to do so.

*Decree affirmed, with costs.*